**FLORAL TRADE COUNCIL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 91–07–00536.**

United States Court of
International Trade.

July 30, 1992.

12. *Nordlinger v. Hahn,* —— U.S. ——, ——, 112 S.Ct. 2326, 2341, 120 L.Ed.2d 1 (1992) (Stevens, J., dissenting).

Stewart & Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon Jr. and Jimmie V. Reyna, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, U.S. Dept. of Justice, Civ. Div., Jane E. Meehan, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., Patrick V. Gallagher, Jr., Vienna, Va., of counsel, for defendant.

## OPINION

RESTANI, Judge:

This is a challenge to the final results of an administrative review of an antidumping order. *Certain Fresh Cut Flowers From Mexico*, 56 Fed.Reg. 29,621 (Dep't Comm. 1991) (final admin. review). Plaintiff challenges the zero rate of duties for future entries assigned "all other" producers, that is, those not investigated.

For the six producers named in the administrative review conducted pursuant to 19 U.S.C. § 1675 (1988), ITA found margins of dumping on the basis of verified data for the period under review or based on the "best information otherwise available" ("BIA") where data was not submitted or was not verifiable. *See* 19 U.S.C. § 1677e(c) (1988). The results of the investigations for the six producers were as follows:

| Company | Rate | Method |
|---|---|---|
| Florex | 264.43 | Verified data for current period |
| Rancho el Aguaje | 0 | Verified data for current period |
| Rancho el Toro | 0 | Verified data for current period |
| Rancho Mision el Descanso | 24.33 | BIA rate based on verified rate from original investigation |
| Tzitzic Tareta | 39.95 | BIA rate based on verified rate from earlier review |
| Visaflor | 29.40 | BIA rate based on BIA rate from original investigation |

56 Fed.Reg. at 29,625.

■ For original "less than fair value" ("LTFV") investigations, ITA's past practice has been to use a weighted average of all of the positive rates, both verified and BIA, to calculate an "all other" rate. This general methodology has been approved by this court. *Serampore Indus. Pvt. Ltd. v.*

*U.S. Dep't of Commerce,* 12 CIT 825, 827–29, 834, 696 F.Supp. 665, 668–69, 673 (1988). For companies not investigated in subsequent reviews, ITA's practice has been to apply the rate from the original investigation. *See* 19 C.F.R. § 353.22(e) (1991); *Certain Fresh Cut Flowers From Mexico,* 55 Fed.Reg. 12,696, 12,699 (Dep't Comm. 1990) (final admin. review). The theory is that dissatisfied parties may request a review to set a rate for actual assessment of duties. For new entrants into the market, also known as "new shippers," ITA has utilized the highest verified rate for the reviewed period. *See Certain Fresh Cut Flowers From Mexico,* 55 Fed.Reg. at 12,700. This apparently was the general practice. In this case, however, ITA rejected the highest verified rate because it was not considered representative. 56 Fed.Reg. at 29,623. That left the highest verified rate at zero. Plaintiff takes issue with that decision, but it also challenges the decision to apply the zero rate to future entries of all uninvestigated parties, that is, both old and new shippers.[1]

ITA arrived at its new approach through a series of choices. First, it decided that use of two general rates, one for past shippers and one for new shippers, presented administrative difficulties for Customs in carrying out the antidumping order. 56 Fed.Reg. at 29,623. Next it decided to use its previous new shipper methodology for past participants. Although this approach may present problems of fairness in a variety of circumstances, the issue before the court is whether this methodology is acceptable as applied in this case. *See Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 404, 636 F.Supp. 961, 965 (1986), *aff'd,* 5 Fed.Cir. (T) 77, 810 F.2d 1137 (Fed.Cir.1987). The first issue to be addressed is whether ITA may use a single "all other" rate for "old" and "new" shippers. Apparently it is difficult for Customs to determine which producers are "new shippers." This industry is extremely fragmented and new producers enter the market frequently. Assuming that no statutory or regulatory barriers to use of a single rate exist, the practical decision to utilize a single rate appears justified.

Because the single rate chosen was the former "new shipper" rate, the court, sua sponte, raised the issue of whether 19 C.F.R. § 353.22(e)(2) prohibits ITA from applying new deposit rates to "old" participants not covered by the review. 19 C.F.R. § 353.22(e) reads as follows:

(e) *Automatic assessment of duty.*

(1) For orders, if the Secretary does not receive a timely request under paragraph (a)(1), (a)(2), or (a)(3) [requests for administrative reviews] of this section, the Secretary, without additional notice, will instruct the Customs Service to assess antidumping duties on the merchandise described in paragraph (b) of this section at rates equal to the cash deposit of, or bond for, estimated antidumping duties required on that merchandise at the time of entry, or withdrawal from warehouse, for consumption and to continue to collect the cash deposits previously ordered.

(2) If the Secretary receives a timely request under paragraph (a)(1), (a)(2), or

---

1. Plaintiff also moves to strike two memoranda forwarded to this court by the defendant on March 13, 1992, as well as portions of defendant's brief referring to those memoranda. ITA apparently relied on the memoranda in deciding to apply a single rate to old and new shippers. Plaintiff seeks to strike these items although they were in existence at the agency prior to the determination at issue.

The motion to strike is denied. Both the preliminary and final results of the antidumping administrative review indicated use of the new methodology for calculating an "all other" rate. Moreover, in the final results, plaintiff even commented upon this change. 56 Fed. Reg. at 29,623. Plaintiff also noted this change in its opening brief. *Plaintiff's Brief* at 7. There is no indication that inclusion of the memos caused plaintiff actual prejudice. In an earlier *Floral Trade* decision, this court recognized that "those documents at the agency which become sufficiently intertwined with the relevant inquiry are part of the record no matter how or *when* they arrived at the agency." *Floral Trade Council v. United States,* 13 CIT 242, 243, 709 F.Supp. 229, 230 (1989) (emphasis added); *see also Intrepid v. Int'l. Trade Admin.,* 16 CIT ——, ——, 787 F.Supp. 227, 229 (1992) (administrative record includes more than just those documents "submitted" by the parties in connection with a particular case).

(a)(3) of this section, the Secretary in accordance with paragraph (e)(1) of this section will instruct the Customs Service to assess antidumping duties, and to continue to collect the cash deposits, on the merchandise not covered by the request.

19 C.F.R. § 353.22(e) (1991). The government argues that "the cash deposits" in subsection (e)(2) does not refer to "the cash deposits previously ordered" despite the reference in subsection (e)(2) to subsection (e)(1), which contains such language. This does not appear to the court to be the best reading of the plain language of the regulation. Nonetheless, based on the arguments presented in this case, and in view of the need for a single "all other" rate in some instances and the possibility that some prior rates may be too old for application to new shippers (*see Manifattura Emmepi S.p.A. v. United States*, 16 CIT ——, —— – ——, 799 F.Supp. 110, 114–16 (1992)), the court has not been convinced that ITA's construction of its regulation is unreasonable.[2] Accordingly, the court finds no error in Commerce's decision to use a single future deposit rate for both "old" uninvestigated companies and new entrants.

■ The next issue is whether the choice of the particular unified "all other" rate was reasonable. Several options were available: the original "all other" rate from the LTFV investigation; the new shipper rate; or a new rate which would compensate for the particular problems of this case caused by elimination of the highest verified rate. Commerce does not appear to have considered all of these options. It simply applied its formula for the "new shipper" rate to derive an "all other" rate, without explanation as to why it was the appropriate choice in this case.

As indicated, the past new shipper formula employed the highest verified rate. Use of this rate presents some concerns.

Ordinarily, one would expect that, where a partial review is requested by an importer or producer, use of the highest verified rate as a unified "all other" rate may be unfair to domestic parties unless the domestic parties have enough information to request that parties known to be dumping be added to the review.[3] Where the domestic party requests a review, one might expect some uninvestigated importers to be prejudiced by use of the highest verified rate. Obviously, parties request reviews they expect will give them better results than the LTFV or previous review margins. As the parties had no notice of ITA's new practice, both sides probably took action or inaction based on ITA's old practice. In this case, had ITA followed its new practice entirely, all uninvestigated importers would have received the highest verified rate of 264.43%, a high rate indeed. Unfairness to importers was eliminated in this case by rejecting the 264.43% rate.

The basis for exclusion of the 264.43% rate was unrepresentativeness. Florex's accumulated interest expenses from a separate line of business that never began operations skewed its cost of production figures and should not have been included in the review analysis. The fact that none of the other verified respondents carried a similar expense confirms that Florex's situation is atypical. Moreover, because Florex represents only a small fraction of the industry, ITA did not err in finding it would be punitive to maintain Florex's rate as the "all other" rate.

■ What followed, however, was a reversion to a zero rate for the "all other" rate because ITA rejected use of any rates based on BIA. As indicated, this court has approved "all other" rates based on an average that includes BIA rates. Exceptions have been recognized if a rate is found to be unrepresentative or there is

---

**2.** Because importing interests did not intervene in this case, the court is unprepared to conclude as a general proposition that ITA's new approach is consistent with its regulation. The court is concerned that all relevant arguments may not have been made on this issue, as well as with regard to several of the subsidiary

points of procedure for calculating the unified "all other" rate.

**3.** As both plaintiff and the Customs Service make clear, relations between importers and producers are ill defined in this industry. Thus, the source of dumping may not be apparent.

some other just reason for exclusion of the rate from the general calculations. *See, e.g., Auto Telecom Co., Ltd. v. United States,* 15 CIT ——, ——, 765 F.Supp. 1094, 1096 (1991) (in two company investigation, BIA rate based on Japanese affiliate excluded from application to "all others" and verified zero rate based on Taiwanese data applied to Taiwanese "all others"), *aff'd sub nom. Bitronic Telecoms Co., Ltd. v. United States,* 954 F.2d 733 (Fed.Cir.1992) (table); *National Knitwear & Sportswear Ass'n v. United States,* 15 CIT ——, ——, 779 F.Supp. 1364, 1373–74 (1991) (unrepresentative BIA rate excluded from "all other" calculation). In this case, however, ITA has not relied on unique facts to justify exclusion of all BIA rates.

■ Not all BIA rates are inappropriate for use in calculating unified "all other" rates. BIA may be very close to reality. It is sometimes derived from averages, and need not be simply the highest rate found or the one alleged by petitioner. In the case at hand, the BIA rates selected were earlier verified rates for some companies and an earlier BIA rate that was not out of proportion. There is no reason to believe that these are punitive rates. They are merely the best information otherwise available.

■ The court believes that Commerce has taken too little note of the remedial nature of the statute and the possible unfairness of application of its new procedure in this case. The total elimination of the Florex rate [4] and exclusion of all BIA rates results in an "all other" rate improperly skewed to reflect the practice of non-dumping importers. *See Serampore Indus.,* 12 CIT at 829, 696 F.Supp. at 669. To the extent possible ITA must determine an accurate dumping margin. *Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1191 (Fed.Cir.1990). Where four of six importers covered by a review are assigned positive margins, it is a fair assumption that use of a zero margin for "all other" importers will defeat the statute's purpose.

In conclusion, ITA is not precluded in this case from using one "all other" rate for "old" and "new" shippers. Neither did it err in rejecting as the "all other" rate an out of proportion rate explained by factors unassociated with the overall industry. It did err in failing to adjust for that action, and in selecting an "all other" rate based on a zero rate when other positive rates of a not unrepresentative nature had been determined for other companies. Accordingly, ITA is to calculate its "all other" rate with due attention to the positive rates. Although the BIA rates found in this case do not seem unrepresentative, ITA need not use the BIA rates in the actual calculation, if it devises a method which remains fair despite the exclusion of BIA rates. This matter is remanded for forty-five days. Objections shall be due within ten days thereof. Responses shall be due seven days thereafter.

---

**4.** ITA does not explain why it did not adjust for the interest expense and whether that would make the Florex rate usable. It also does not explain why an average rate rather than the highest rate is not selected.