**FEDERAL–MOGUL CORPORATION, Plaintiff and Plaintiff–Intervenor,**

**The Torrington Company, Plaintiff and Plaintiff–Intervenor,**

v.

**UNITED STATES, Defendant,**

NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation; Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.; Peer Bearing Company; NSK Ltd. and NSK Corporation; Caterpillar Inc.; Minebea Co., Ltd. and NMB Corporation, Defendant–Intervenors.

Court No. 91–07–00530.

United States Court of International Trade.

May 25, 1993.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley, Joseph A. Perna, V and Larry Hampel, Washington, DC, for plaintiff and plaintiff-intervenor Federal–Mogul Corp.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Wesley K. Caine, Christopher J. Callahan, John M. Breen, Geert De Prest, Margaret E.O. Edozien, Lane S. Hurewitz, Patrick J. McDonough, Robert A. Weaver and Amy S. Dwyer, Washington, DC, for plaintiff and plaintiff-intervenor the Torrington Co.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis and Jane E. Meehan; John D. McInerney, Acting Deputy Chief Counsel for Import Admin., Dean A. Pinkert, Stephen J. Claeys and Craig R. Giesze, Atty.-Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Neil R. Ellis, Susan E. Silver, T. George Davis and Niall P. Meagher, Washington, D.C. for defendant-intervenors Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

Barnes, Richardson & Colburn, Robert E. Burke, Donald J. Unger, Kazumune V. Kano and Diane A. MacDonald, Chicago, IL, for defendant-intervenors NTN Bearing Corp. of America, American NTN Bearing Mfg. Corp. and NTN Corp.

Coudert Brothers, Robert A. Lipstein, Matthew P. Jaffe and Nathan V. Holt, Washington, DC, for defendant-intervenors NSK Ltd. and NSK Corp.

Venable, Baetjer, Howard & Civiletti, John M. Gurley, John C. Dibble and Lindsay B. Meyer, Washington, DC, for defendant-intervenor Peer Bearing Co.

Powell, Goldstein, Frazer & Murphy, Richard M. Belanger, Neil R. Ellis and D. Christine Wood, Washington, DC, for defendant-intervenor Caterpillar Inc.

Tanaka Ritger & Middleton, H. William Tanaka, Michele N. Tanaka and Michael J. Brown, Washington, DC, for defendant-intervenors Minebea Co., Ltd. and NMB Corp.

## *OPINION*

TSOUCALAS, Judge:

Plaintiff, Federal–Mogul Corporation ("Federal–Mogul"), commenced this action to challenge certain aspects of the Department of Commerce, International Trade Administration's ("ITA") final results in the first administrative review of imports of antifriction bearings ("AFBs") from Japan. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Final Results of Antidumping Duty Administrative Reviews* ("*Final Results*"), 56 Fed.Reg. 31,754 (1991). Substantive issues raised by the parties in the underlying administrative proceeding were addressed by the ITA in the issues appendix to *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review* ("*Issues Appendix*"), 56 Fed.Reg. 31,692 (1991).

Federal–Mogul has now filed its second motion for partial judgment on the agency record alleging that the ITA's use of the "all others" rate calculated during this administrative review for companies subject to the "all others" cash deposit rate from the less-than-fair-value ("LTFV") investigation which were not examined during this review was

not in accordance with law. *Federal–Mogul Corporation's Second Motion for Partial Judgment on the Agency Record.*

### Background

On June 11, 1990, the ITA initiated an administrative review of imports of ball bearings, cylindrical roller bearings, spherical plain bearings and parts thereof from Japan. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews,* 55 Fed.Reg. 23,575 (1990).

On March 15, 1991, the ITA published its preliminary determination in the administrative review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts thereof from Japan; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Antidumping Duty Administrative Reviews,* 56 Fed.Reg. 11,186 (1991).

On July 11, 1991, the ITA published its Final Results in this proceeding. *Final Results,* 56 Fed.Reg. 31,754.

### Discussion

The Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

■ A final determination by the ITA in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206,

216, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

### "All Others" Rate

In this administrative review, for companies which were not investigated in the LTFV investigation and therefore received the LTFV "all others" cash deposit rate and were also not investigated during this administrative review, the ITA used the new "all others" rate calculated in this administrative review as the new cash deposit rate for those companies. *Final Results,* 56 Fed.Reg. at 31,756–57.

In the *Final Results* the ITA stated:

The following deposit requirements will be effective for all shipments of Japanese-origin antifriction bearings (other than tapered roller bearings) and parts thereof, entered, or withdrawn from warehouse, for consumption on or after the date of publication of the final results of these administrative reviews, as provided by section 751(a)(1) of the Act:

. . . . .

(4) The cash deposit rate for all other manufacturers which export the subject merchandise shall be the "All Others" rate listed in the section "Final Results of Review" above for each class or kind of merchandise [23.88% for ball bearings, 51.82% for cylindrical roller bearings and 3.08% for spherical plain bearings].

56 Fed.Reg. at 31,756–57.

Federal–Mogul argues that the ITA's use of the "all others" rate calculated during this administrative review as a new cash deposit rate for companies previously subject to the LTFV "all others" rate and not reviewed during this administrative review is not in accordance with 19 U.S.C. § 1675(a)(2) (1988) and 19 C.F.R. § 353.22(e)(1) (1991).[1] *Memo-*

---

1. 19 U.S.C. § 1675(a)(2) states in pertinent part that the ITA's determination of antidumping duties made during an administrative review "shall be the basis . . . for deposits of estimated duties."

19 C.F.R. § 353.22(e) states:

(e) *Automatic assessment of duty.* (1) For orders, if the Secretary does not receive a timely request [for review], the Secretary,

without additional notice, will instruct the Customs Service to assess antidumping duties on the merchandise described in paragraph (b) of this section at rates equal to the cash deposit of, or bond for, estimated antidumping duties required on that merchandise at the time of entry, or withdrawal from warehouse, for consumption *and to continue to collect the cash deposits previously ordered.*

*randum in Support of Federal–Mogul Corporation's Second Motion for Partial Judgment on the Agency Record ("Federal–Mogul's Memorandum")* at 3–12.

Specifically, Federal–Mogul argues that the statute and the regulation require that when a company subject to an antidumping duty cash deposit rate is not reviewed during an administrative review, the rate at which that company has made cash deposits automatically becomes that company's assessment rate for the period covered by that administrative review and its entries made during that period of review are liquidated at that rate. *See* 19 U.S.C. § 1675(a)(2); 19 C.F.R. § 353.22(e).

Federal–Mogul further argues that 19 U.S.C. § 1675(a)(2) requires that a company's assessment rate calculated during an administrative review "shall be the basis ... for deposits of estimated duties" and that 19 C.F.R. § 353.22(e)(2) requires that the ITA instruct the Customs Service to collect cash deposits based on the assessment rate calculated during the administrative review for each unreviewed company. *Federal–Mogul's Brief* at 5–6; *Federal–Mogul Corporation's Reply to the Government's Opposition to Federal–Mogul Corporation's Second Motion for Partial Judgment on the Agency Record ("Federal–Mogul's Reply")* at 5–7. Therefore, Federal–Mogul argues that the LTFV "all others" cash deposit rate becomes the assessment rate calculated during an administrative review for the unreviewed companies subject to that rate, and that rate in turn remains the cash deposit rate for those companies for that administrative review. *Federal–Mogul's Brief* at 5–6; *Federal–Mogul's Reply* at 5–7.

Federal–Mogul points out that the ITA's own explanation of 19 C.F.R. § 353.22(e)(2) states:

> Because the cash deposit (or bond) rate is the basis for each interested party's decision whether to exercise its right to request a review, it would make no sense to change the rate after the time for re-

---

(2) If the Secretary receives a timely request [for review], the Secretary in accordance with paragraph (e)(1) of this section will instruct the Customs Service to assess antidumping duties,

---

quest has expired.... *In any event, the failure of an interested party to file a timely request for review constitutes a determination under section 751 of the dumping margin for the entries made during the review period.*

*Antidumping Duties; Final Rule,* 54 Fed. Reg. 12,742, 12,756 (1989) (emphasis added); *Federal–Mogul's Memorandum* at 6; *Federal Mogul's Reply* at 5–6.

In addition, Federal–Mogul argues that the ITA's use of the new "all others" rate runs counter to the reasons articulated by Congress when it amended the antidumping duty statute in 1984 to make administrative reviews conditional upon a request by an interested party. *See* H.R.Conf.Rep. No. 1156, 98th Cong., 2d Sess. 181 (1984), U.S.Code Cong. & Admin.News, pp. 4910, 5298. Federal–Mogul argues that changing a company's cash deposit rate without reviewing that company's actual entries will force domestic interested parties to request reviews of all parties subject to an antidumping duty order to prevent them from receiving a potentially incorrect and lower cash deposit rate. Federal–Mogul argues that this will vastly increase the number and complexity of administrative reviews the ITA is required to perform, thereby defeating the purpose of the 1984 amendments. *Federal–Mogul's Memorandum* at 7–8.

Federal–Mogul argues that this Court should not follow *Floral Trade Council v. United States,* 16 CIT ——, 799 F.Supp. 116 (1992), which upheld the ITA's use of the new "all others" rate as the cash deposit rate for unreviewed companies. Federal–Mogul argues that the court in *Floral Trade Council* was "concerned that all relevant arguments may not have been made on this issue" and was "unprepared to conclude as a general proposition that the ITA's new approach is consistent with its regulation." 16 CIT at —— n. 2, 799 F.Supp. at 119 n. 2. Federal–Mogul argues that the court in *Floral Trade Council* decided the case solely on its specific

---

*and to continue to collect the cash deposits, on the merchandise not covered by the request.* (Emphasis added).

facts. *Federal–Mogul's Memorandum* at 9–10 n. 6.

Federal–Mogul also argues that the ITA has departed from its longstanding administrative practice without providing an explanation for its departure. *Federal–Mogul's Memorandum* at 8–11. Federal–Mogul points out that while the ITA states that it implemented its new practice in *Notice of Final Results of Antidumping Duty Administrative Review: Certain Fresh Cut Flowers From Mexico ("Flowers")*, 56 Fed.Reg. 29,621, 29,623 (1991), the ITA continued to use the pre-existing cash deposit rate for unreviewed companies in *Color Television Receivers, Except for Video Monitors, From Taiwan; Final Results of Antidumping Duty Administrative Review*, 56 Fed.Reg. 31,378, 31,387 (1991), which was published after *Flowers* and the day before the Final Results challenged here. *Federal–Mogul's Memorandum* at 10 n. 6.

Finally, Federal–Mogul argues that issues which deal with cash deposit rates set during an administrative review do not become moot upon the publication of the final results of the next administrative review which sets new cash deposit rates. Federal–Mogul argues that precisely because cash deposit rates are superseded in subsequent reviews, almost always before judicial review can occur, cash deposit rate issues are not moot because they fall within the exception to the mootness doctrine for issues "capable of repetition, yet evading review." *Federal–Mogul's Memorandum* at 4 n. 4 (*citing DeFunis v. Odegaard*, 416 U.S. 312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974); *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Torrington Co. v. United States*, 16 CIT ——, ——, 802 F.Supp. 453, 454 (1992)); *Federal–Mogul's Reply* at 4.

In addition, Federal–Mogul argues that this issue is not moot because if this Court agrees that the ITA's use of the new "all others" rate for unreviewed companies subject to the "all others" cash deposit rate from the LTFV investigation is not in accordance with law, then the ITA will be required to reinstate the LTFV cash deposit rate for any company which has not been subject to an administrative review of its entries. Each entry made pursuant to the incorrect cash deposit rate which is awaiting liquidation has benefited and continues to benefit from the ITA's unlawful action. *Federal–Mogul's Reply* at 2.

Also, entries of AFBs made between May 1, 1992 and June 23, 1992 are still subject to the incorrect cash deposit rate set during the first administrative review at issue here and will not be assessed for liquidation at the earliest until the ITA initiates the fourth administrative review which is anticipated sometime in May or June 1993. Therefore, entries subject to the incorrect "all others" cash deposit rate continue to exist unliquidated and are potentially subject to assessment at an incorrect rate and, therefore, this issue is not moot. *Id.* at 3–4; *see Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews*, 57 Fed.Reg. 28,360 (1992); *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof; Initiation of Antidumping Administrative Reviews and Request for Revocation of Order (in Part)*, 57 Fed.Reg. 29,700 (1992).

Defendant argues that this Court should refuse to reach the issue of the ITA's use of the new "all others" rate as the cash deposit rate for companies which were not subject to review because publication of the new cash deposit rates in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews*, 57 Fed.Reg. 28,360, has made this issue moot. *Defendant's Memorandum in Opposition to Plaintiff's Second Motion for Partial Judgment Upon the Agency Record ("Defendant's Memorandum")* at 6–11.

Defendant argues that, if the Court chooses to address the merits of Federal–Mogul's claim, 19 U.S.C. § 1675(a) says nothing about how the ITA is to calculate cash deposit rates for unreviewed companies. *Defendant's Memorandum* at 13–14, 19–20.

Defendant argues that 19 U.S.C. § 1675(a)(2) does not apply to entries which are not covered by a request for administrative review. *Id.* at 13.

Defendant admits that 19 C.F.R. § 353.-22(e) does provide for the automatic assessment of antidumping duties for unreviewed companies at their cash deposit rate but, argues that it applies only to entries of companies which are subject to a specific cash deposit rate and not to entries subject to the "all others" rate. Defendant states that the ITA has a separate administrative practice governing such entries. Defendant argues that since 19 C.F.R. § 353.22(e) does not apply to entries covered by the "all others" rate, the ITA is free to alter its administrative practice in regard to those entries. Defendant argues that this administrative practice is an interpretive rule which is not subject to the notice and comment provisions of the Administrative Procedures Act. *Defendant's Memorandum* at 14–17. However, defendant points out that the ITA has explained its change of practice on this issue in numerous proceedings. *Id.* at 22–23.

In support of its position, defendant relies on *Floral Trade Council,* 16 CIT at ――, 799 F.Supp. at 119, where the court raised, *sua sponte,* the issue of whether 19 C.F.R. § 353.22(e)(2) prohibits the ITA from using the new "all others" rate for old participants not covered by the current administrative review. Defendant argues that the court in *Floral Trade Council* concluded that the ITA's interpretation of the regulation allowing the use of the new "all others" rate for unreviewed companies was not unreasonable. 16 CIT at ――, 799 F.Supp. at 119. *Defendant's Memorandum* at 11–13.

Defendant alleges that its change in administrative practice was explained and justified in *Flowers,* 56 Fed.Reg. at 29,623, which was affirmed in *Floral Trade Council,* 16 CIT ――, 799 F.Supp. 116. The court in *Floral Trade Council* stated that the:

> ITA arrived at its new approach through a series of choices. First, it decided that use of two general rates, one for past shippers and one for new shippers, presented administrative difficulties for Customs in carrying out the antidumping or-

der. 56 Fed.Reg. at 29,623. Next it decided to use its previous new shipper methodology for past participants. Although this approach may present problems of fairness in a variety of circumstances, the issue before the court is whether this methodology is acceptable as applied in this case.

16 CIT at ――, 799 F.Supp. at 118 (citations omitted); *Defendant's Memorandum* at 12–13; 22–23.

Finally, defendant argues that Federal–Mogul seeks inappropriate relief. Defendant argues that this Court's jurisdiction over this matter relates only to entries covered by the first administrative review pursuant to 28 U.S.C. § 2640(b) (1988) and 19 U.S.C. § 1516a(b)(1)–(2) (1988). Defendant argues that this Court does not have jurisdiction to order the ITA not to use its new "all others" methodology in future reviews. *Defendant's Memorandum* at 23–25. Defendant asserts that Federal–Mogul is really asking this Court for a writ of mandamus and that Federal–Mogul has not satisfied the requirements for such extraordinary relief. *Id.* at 25–28.

■ This Court finds that this issue is not moot because the ITA's use of the new "all others" rate for unreviewed companies covers entries made between May 1, 1992 and June 23, 1992, which are not yet subject to an administrative review and have not yet been liquidated. Therefore, these entries are still subject to the Final Results at issue here and are within this Court's jurisdiction. 28 U.S.C. § 1581(c).

Also, this Court finds that this issue is not moot because it is an issue which is "capable of repetition, yet evading review." *DeFunis,* 416 U.S. at 319, 94 S.Ct. at 1707; *Roe v. Wade,* 410 U.S. at 125, 93 S.Ct. at 713; *Southern Pacific Terminal,* 219 U.S. at 515, 31 S.Ct. at 283; *NSK Ltd. v. United States,* 17 CIT ――, 819 F.Supp. 1096 (1993).

■ As to the merits of this issue, this Court finds that the statutory framework for administrative reviews clearly anticipates that in cases where a company makes cash deposits on entries of merchandise subject to antidumping duties, and no administrative

review of those entries is requested, the cash deposit rate automatically becomes that company's assessment rate for those entries. 19 U.S.C. § 1675(a)(2); 19 C.F.R. § 353.22(e). Defendant has admitted this. *Defendant's Memorandum* at 17. This also was clearly the ITA's interpretation of the statute when it promulgated its current regulations. *Antidumping Duties; Final Rule*, 54 Fed.Reg. at 12,756.

■ This Court also finds that 19 U.S.C. § 1675(a)(2)'s requirement that the ITA's determination of a company's antidumping duty assessment rate during an administrative review "shall be the basis ... for deposits of estimated duties" requires the ITA to use the assessment rate determined in an administrative review as the new cash deposit rate for that company. In a situation where a company's entries are unreviewed, the prior cash deposit rate from the LTFV investigation becomes the assessment rate, which must in turn become the new cash deposit rate for that company. *See* 19 U.S.C. § 1675(a)(2).

In addition, Congress amended 19 U.S.C. § 1675(a) to require administrative reviews of entries of merchandise subject to an outstanding antidumping duty order only upon request by an interested party. Trade and Tariff Act of 1984, Pub.L. No. 98–573, Title VI, § 611(a)(2), 98 Stat. 3031 (1984). In adopting this amendment, Congress stated that the amendment "is designed to limit the number of reviews in cases in which there is little or no interest, thus limiting the burden on petitioners and respondents, as well as the administering authority." H.R.Conf.Rep. No. 1156 at 181, U.S.Code Cong. & Admin.News, p. 5298.

In making a decision whether or not to request an administrative review of certain entries, the parties rely on the cash deposit rate then in force for those entries. If the ITA is allowed to arbitrarily change this cash deposit rate for unreviewed firms, which are presumably unreviewed because the parties are happy with assessments and future cash deposits being made at that cash deposit rate, in many cases the parties will be required to request administrative reviews of all entries of the subject merchandise. Im-

porters and foreign producers will make the request so their future entries will not be subject to a potentially higher "all others" cash deposit rate. Likewise, the domestic industry will request reviews to ensure that future entries will not be subject to a potentially lower "all others" cash deposit rate. This will have the effect of increasing the number and complexity of administrative reviews thereby defeating the express purpose of the 1984 amendment.

Finally, the court in *Floral Trade Council* made it clear that it was willing to sanction the use of the ITA's new "all others" rate methodology based solely on the specific facts presented and the arguments made before the court in that case. As the court stated:

the issue before the court is whether this methodology is acceptable as applied in this case.

.     .     .     .     .

Because importing interests did not intervene in this case, the court is unprepared to conclude as a general proposition that ITA's new approach is consistent with its regulation. The court is concerned that all relevant arguments may not have been made on this issue, as well as with regard to several of the subsidiary points of procedure for calculating the unified "all other" rate.

*Floral Trade Council*, 16 CIT at ——, —— n. 2, 799 F.Supp. at 118, 119 n. 2. Therefore, this Court declines to follow *Floral Trade Council* because it was limited to the facts of that case.

This Court finds that the ITA's use of the new "all others" rate calculated during this administrative review as the cash deposit rate for unreviewed companies which received the "all others" rate during the LTFV investigation is not in accordance with law. This case is remanded to the ITA to allow the ITA to reinstate the "all others" cash deposit rate from the LTFV investigation for entries made between May 1, 1992 and June 23, 1992, which have as yet not become subject to assessment pursuant to a subsequent administrative review. The ITA will file the results of this remand with this Court on

June 28, 1993 along with the results of re-mand filed pursuant to *Federal–Mogul Corp. v. United States,* 17 CIT ——, 813 F.Supp. 856 (1993).

### ORDER

This case having been duly submitted for decision and the Court, after due delibera-tion, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that the Department of Com-merce, International Trade Administration ("ITA") reinstate the "all others" cash depos-it rate from the less-than-fair-value investiga-tion for entries made between May 1, 1992 and June 23, 1992, which have as yet not become subject to assessment pursuant to a subsequent administrative review; and it is further

**ORDERED** that the ITA will file the re-sults of this remand with this Court on June 28, 1993 along with the results of remand filed pursuant to *Federal–Mogul Corp. v. United States,* 17 CIT ——, 813 F.Supp. 856 (1993).