JEUMONT SCHNEIDER TRANSFORMATEURS, PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND ABB POWER T&D CO., INC., DEFENDANT-INTERVENOR

Court No. 93–09–00646

(Dated April 20, 1994)

*Wilmer, Cutler & Pickering (John D. Greenwald* and *Ronald I. Meltzer)* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(A. David Lafer* and *John C. Erickson III), Marguerite E. Trossevin,* Attorney Advisor, United States Department of Commerce, of counsel, for defendant.
*Steptoe & Johnson (Richard O. Cunningham, Robert J. Sokota* and *Eric C. Emerson)* for defendant-intervenor.

## OPINION

RESTANI, *Judge:* This matter is before the court for judgment upon the agency record pursuant to USCIT Rule 56.2. Plaintiff challenges the final results of the fifth administrative review of the antidumping finding concerning *Large Power Transformers from France,* 58 Fed. Reg. 44,497 (Dep't Comm. 1993) (final admin. review) *("Final Review").* The issue before the court is whether the United States Department of Commerce applied an appropriate antidumping duty deposit rate to "new shippers."

## BACKGROUND

Prior to 1991, after each periodic administrative review Commerce set two deposit rates for the upcoming importing period for shippers who had never been reviewed and had therefore never been assigned a company specific rate. Old unreviewed shippers were assessed duties for the period of review based on their existing deposit rates and that rate remained the deposit rate for the upcoming period. Shippers entering the U.S. market during the review period were assigned a deposit rate based on the highest calculated rate for any shipper reviewed during the review period, the so-called "new shipper" rate.[1]

After being advised by Customs that the dual deposit rate structure was not administrable due to uncertainty as to who were new and old shippers, Commerce decided to apply the new shipper rate as the across-the-board, i.e. "all others," deposit rate for unreviewed shippers. In *Federal-Mogul Corp. v. United States,* 822 F. Supp. 782, 788 (Ct. Int'l Trade 1993), and *Floral Trade Council v. United States,* 822 F. Supp. 766, 771 (Ct. Int'l Trade 1993) *("Floral Trade II"),* the court found that a single all others deposit rate based on the new shipper rate was invalid as to "old shippers." The court held that for unreviewed "old shippers," the plain language of 19 C.F.R. § 353.22(e) (1991) and (1992) required

---

[1] The "new shipper" rate is a rate calculated from current data, as opposed to a best information available ("BIA") rate. *See* 19 U.S.C. § 1677e(c) (1988).

assessments and new deposits to be based on past deposit rates. *Federal-Mogul,* 822 F. Supp. at 787–88; *Floral Trade II,* 829 F. Supp. at 771. The regulation's purpose is to bring stability to the rate assignment process and to avoid unnecessary administrative review requests by parties who are basically satisfied by the existing rate. *See Floral Trade II,* 829 F. Supp. at 770–71; *Antidumping Duties,* 54 Fed. Reg. 12,742, 12,757 (Dep't Comm. 1989) (final rule). Commerce, therefore, had the choice of complying with the court's decision by establishing a multiple-rate system for unreviewed shippers or by applying the "all others" deposit rate for "old shippers" to all unreviewed shippers. Subsequently, in reaction to the court opinions, Commerce adopted a single "old shipper" rate policy rather than a policy permitting multiple rate structures.

Under 19 C.F.R. § 353.22(e) (1993), any rate assigned remains the rate for that shipper until that rate is individually reviewed. The shipper, the importer or an interested domestic party may request a review. *See* 19 U.S.C. § 1675(b) (1988); 19 C.F.R. §§ 353.2(k), 353.22(a) (1993). Thus, what is at issue here is the first deposit rate set for a new shipper, not its assessment rate or future deposit rates. Presumably, unless the cost of participating in a review outweighs the benefits to be gained, the new shipper will request a review if he is dissatisfied with the initial deposit rate. In the preliminary determination in this case, pursuant to its then practice, Commerce assigned plaintiff an initial deposit rate of 1.82 percent, the highest calculated rate for the current period, i.e., the "new shipper" rate. *Large Power Transformers from France,* 57 Fed. Reg. 53,467, 53,467 (Dep't Comm. 1992) (prelim admin. review). The court opinions intervened and in the final determination a 24 percent rate was assigned. *Final Review,* at 44,498.

The 24 percent rate selected by Commerce is the rate from the original Treasury Department less than fair value ("LTFV") investigation in this case. *Id.;* 47 Fed. Reg. 10,268, 10,269 (Dep't Comm. 1982). For its own LTFV determinations, Commerce is able to use the "all others" rate found therein. The "all others" rate is often an averaged rate. *Floral Trade Council v. United States,* 799 F. Supp. 116, 117 (Ct. Int'l Trade 1992) *("Floral Trade I").* Commerce is not always able to determine an "all others" rate from the predecessor Treasury Department findings. *See Final Review,* at 44,498. In such a case, it chooses to use the highest rate calculated by Commerce in the first administrative review, i.e., the "new shipper" rate. *Id.* In this case the only rate set in the LTFV investigation and the only rate set in the first administrative review, a BIA rate, are the same 24 percent rate. Thus, we are not called upon to determine whether the first review period "new shipper" rate is a correct rate to apply if it varies from the LTFV rate.

Plaintiff objects to both the procedure used to implement the new policy and to the imposition of the 24 percent deposit rate. It seeks reinstitution of the 1.82 percent rate, the highest calculated rate in the period in which it entered the U.S. market.

### DISCUSSION

Despite the somewhat complicated background explanation, the issue here is not terribly complex, that is, even though Commerce could have, under its regulation, utilized a multiple "all others" rate structure, did it abuse its discretion in utilizing the only unitary rate available to it here? As a general matter, the solution selected by Commerce is probably a sensible alternative for many cases. The original rate may be somewhat stale for new companies,[2] but Customs does appear to have an administrative problem with a multiple rate structure, at least for some products. *See Floral Trade I*, 799 F. Supp. at 118. Commerce's new practice, however, has not been reduced to a regulation, and it was not circulated for general comment prior to adoption. Rather, Commerce was required to abandon immediately its interim practice, and the court views its action here as simply application of the newly interpreted 19 C.F.R. § 353.22(e) to particular facts.[3] Commerce's approach, however, is subject to argument and adjustment for good reason in a particular case. Depending on the degree of Customs' difficulties and the relative need for a steady general practice there may be differing outcomes, particularly during this transitional period. Because there is, as yet, no binding rule, Commerce is free within the confines of the statute and the regulation to make such adjustments as are needed.

Given the dramatic change in practice between the preliminary and final determinations, allowance of a period of comment in this case to assess particular problems created by the change in rate selection procedures and the equities involved was necessary. In this case plaintiff had no opportunity to distinguish the state of its industry from that described in *Floral Trade I*, to present any equitable arguments attributable to the post-importation change in policy or to propose a reasonable alternative. Furthermore, Commerce did not have an opportunity to assess those arguments and to render a reasoned determination in response. Accordingly, the court is not in a position to determine if Commerce acted arbitrarily or abused its discretion, and this matter must be remanded.

Commerce shall within 45 days accept comments from plaintiff and other interested parties and render a reasoned determination as to the application of a particular deposit rate to plaintiff. Any objections may be filed within twenty days of the remand determination. Defendant may respond within fifteen days thereafter.

---

[2] The LTFV rate used here is particularly aged. It is also not an average rate. It is the rate for one company during the 1970's. *See* 47 Fed. Reg. at 10,268–69.

[3] The court has trouble viewing the selection of the single rate as opposed to a multiple rate structure as an interpretive rule. The interpretation of the applicable regulation has already been made by the court and it permits a variety of results. An interpretive rule, in contrast, is "an agency statement of general or particular applicability and future effect," 5 U.S.C. § 551(4) (1988), which is not binding on the courts. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 315–16 (1979).