JEUMONT SCHNEIDER TRANSFORMATEURS, PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND ABB POWER T&D CO., INC., DEFENDANT-INTERVENOR

Court No. 93–12–00794

(Dated July 8, 1994)

*Wilmer, Cutler & Pickering (John D. Greenwald* and *Ronald I. Meltzer)* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(A. David Lafer* and *John C. Erickson III), Marguerite E. Trossevin,* Attorney Advisor, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.
*Steptoe & Johnson (Richard O. Cunningham* and *Eric C. Emerson)* for defendant-intervenor.

## OPINION

RESTANI, *Judge:* This matter is before the court pursuant to USCIT Rule 56.2 for judgment upon the agency record. Plaintiff Jeumont

---

[4] The statute reads:
No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling * * *.

19 U.S.C. § 1315(d) (1988).

Schneider Transformateurs ("JST") challenges the determination of the International Trade Administration of the United States Department of Commerce ("ITA" or "Commerce") in *Large Power Transformers from France,* 58 Fed. Reg. 59,987 (Dep't Comm. 1993) (termination of admin. review). The issue before the court is whether the termination of an administrative review and liquidation of entries for that review period at a preliminarily determined rate precludes the future imposition of a finally determined cash deposit rate from the prior period.

### BACKGROUND

Pursuant to 19 C.F.R. § 353.22(a)(1) (1993), petitioner ABB Power T&D Co., Inc. ("ABB") requested administrative reviews of JST's entries during June 1, 1991 through May 31, 1992[1] ("first review") and June 1, 1992 through May 31, 1993[2] ("second review"). ABB's request for the second review was made before the first review had been completed.

JST made no shipments during the first review period and thus JST's entries were not a specific subject of the review. The absence of reviewable entries caused Commerce to classify JST as a "new shipper." Commerce found a dumping margin of 1.82 percent in its preliminary determination of the first review, published on November 10, 1992.[3] *Large Power Transformers from France,* 57 Fed. Reg. 53,467 (Dep't Comm. 1992) (prelim. admin. review). JST's first import occurred during the second review period. Thus, the second review period was JST's first opportunity to have its entries specifically reviewed. The final determination of the first review was not yet published at the time of JST's entries. Therefore, JST posted cash deposits for the second review period at the 1.82 percent "new shipper" rate found in the preliminary determination.

The ITA published the final results of the first review on August 23, 1993. *Large Power Transformers From France,* 58 Fed. Reg. 44,497 (Dep't Comm. 1993) (final admin. review) *("Final Results").* Pursuant to intervening court decisions, the ITA chose to apply the "old shippers" rate, based on the original less than fair value ("LTFV") investigation, as the "all others" deposit rate for all unreviewed shippers. *See Federal-Mogul Corp. v. United States,* 822 F. Supp. 782, 788 (Ct. Int'l Trade 1993); *Floral Trade Council v. United States,* 822 F. Supp. 766, 771 (Ct. Int'l Trade 1993) *("Floral Trade II").* Consequently, the ITA determined that the "all others" deposit rate be set at 24 percent. *Final Results,* at 44,498. JST, as an as yet unreviewed shipper, challenged that determination in *Jeumont Schneider Transformateurs v. United States,* Slip Op. 94–63 (Apr. 20, 1994) *("Jeumont I").*

[1] 57 Fed. Reg. 32,521 (Dep't Comm. 1992) (init. of antidumping & countervailing duty admin. reviews).

[2] 58 Fed. Reg. 39,007 (Dep't Comm. 1993) (init. of antidumping & countervailing duty admin. reviews).

[3] This was the highest non-BIA rate determined in a prior administrative review for a company in this industry. *Large Power Transformers From France,* 49 Fed. Reg. 36,888, 36,896 (Dep't Comm. 1984) (final admin. review).

Finding the final determination of the first review to be acceptable, ABB made a timely withdrawal of its request for the second review on September 16, 1993, pursuant to 19 C.F.R. § 353.22(a)(5). The termination notice for the second review was issued on November 12, 1993. The notice specified that "[a]bsent a review, entries during this period are subject to the automatic assessment provisions of [19 C.F.R.] § 353.22(e)." *Large Power Transformers From France,* 58 Fed. Reg. at 59,987. Apparently, ABB expected that the 24 percent deposit rate determined in the first administrative review would continue as the "all others" future deposit rate, which it assumed would be applied to JST if no specific review was conducted. JST, on the other hand, knew that, as a result of the termination, its entries during the second review period would be assessed at the 1.82 percent rate in effect when the entries were made. JST asserts that future entries should also be subject to a deposit rate of 1.82 percent, as its entries for the second review period were liquidated at that rate. The disagreement as to the deposit rate for future entries brought about this challenge.

On April 20, 1994, the court issued a decision in *Jeumont I* remanding the first review determination in order to allow JST to present arguments and alternatives to the 24 percent "all others" rate. Slip Op. 94–63, at 6–7. The court stated that "the solution selected by Commerce is probably a sensible alternative for many cases." *Id.* at 5. The court noted, however, that the ITA's new practice of assigning a unitary "all others" rate based on the "old shipper" rate was a "dramatic change" that had not been reduced to a regulation and, in the particular case, produced a significant difference between the preliminary and final rate determinations. *Id.* at 5–6.

As a result of the termination of the second administrative review, Commerce is now imposing the 24 percent "all others" rate on JST's entries. JST requests that the 1.82 percent cash deposit rate be reinstated for future entries because JST's entries for the second review period have now been assessed and liquidated at that rate. Defendants assert that the "all others" rate established by the first review should control JST's future deposit rate.

## DISCUSSION

Jurisdiction for this action lies under 28 U.S.C. § 1581(c) (1988) (granting jurisdiction over challenges to determinations under 19 U.S.C. § 1516a (1988)). Pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii), judicial review is available for final determinations by Commerce or the International Trade Commission under 19 U.S.C. § 1675 (1988). Under § 1675(a)(1), Commerce must review the calculation of antidumping duties for a particular period upon request by an interested party. If no request is made, duties will be assessed pursuant to 19 C.F.R. § 353.22(e) (1993). Commerce has stated that "the failure of an interested party to file a timely request for review constitutes a determination under section 751 [19 U.S.C. § 1675]." 54 Fed. Reg. 12,742, 12,756 (1989) (to be

codified at 19 C.F.R. pt. 353) (commenting on final rule). The termination of a review based on the withdrawal of a request is analogous. Moreover, as § 1675(a)(2) governs the imposition of cash deposit rates based on assessed duty rates, a termination notice that affects cash deposit rates is a determination under § 1675 for purposes of § 1581(c) jurisdiction.[4] As such, the determination at issue is to be sustained unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B) (1988).

If this is not a challenge to a § 1675 determination, jurisdiction lies under 28 U.S.C. § 1581(i) (1988), as there would be no other procedural mechanism for bringing this issue before the court. The imposition of cash deposit rates for JST's future entries following the second review period did not flow from any other challengeable determination, but clearly is the type of determination for which review is warranted. If jurisdiction were found under § 1581(i), the standard of review would be governed by 5 U.S.C. § 706 (1988) of the Administrative Procedure Act. *See* 28 U.S.C.A. § 2640(e) (West Supp. 1994).

As a preliminary matter, JST's argument that *Jeumont I* prevents the imposition of a rate based on the first review determination cannot succeed. *Jeumont I* addressed the specific issue of whether Commerce correctly applied the LTFV rate as the "all others" rate. The court did not decide whether the selection of that rate was within Commerce's discretion, but remanded the determination to provide JST with an opportunity to present alternatives and for Commerce to consider these alternatives. *Jeumont I* did not address the issue of how subsequent liquidation at the preliminarily determined rate would affect the "all others" cash deposit rate.

Section 1675(a)(2) governs the assessment of dumping margins for merchandise subject to an antidumping review. The statute states that the ITA

shall determine—

(A) the foreign market value and United States price of each entry * * * subject to the antidumping duty order * * *, and

(B) the amount, if any, by which the foreign market value of each such entry exceeds the United States price of the entry. * * * [T]hat determination shall be the basis for the assessment of antidumping duties on entries of the merchandise * * * and for deposits of estimated duties.

19 U.S.C. § 1675(a)(2). Section 353.22(e) of the regulations directs the automatic assessment of duties and sets cash deposits for unreviewed

---

[4] To obtain jurisdiction under § 1581(c), an interested party must file a summons within thirty days after publication of the determination in the Federal Register. 19 U.S.C. § 1516a(a)(2)(A). The termination notice of the second review was published on November 12, 1993 and JST filed its summons on December 10, 1993, within the thirty-day deadline.

entries. The regulation states that if the ITA does not receive a timely request for review, the ITA

> will instruct the Customs Service to assess antidumping duties * * * at rates equal to the cash deposit of, or bond for, estimated antidumping duties required on that merchandise at the time of entry, * * * and to continue to collect the cash deposits previously ordered.

19 C.F.R. § 353.22(e)(1).

On September 16, 1993, ABB withdrew its request for an administrative review. This retraction was accepted by the ITA and JST was given notice of the impending termination of the review. Thus, JST was no longer involved in a company-specific review of its entries. This court's decision in *Floral Trade II* states that "[t]he regulation 19 C.F.R. § 353.22(e) details the process for assessing duties for parties not involved in an administrative review." 822 F. Supp. at 770.[5]

There is no dispute as to the proper assessment rate for entries made during the period covered by the terminated review. JST argues, however, that this court's decisions in *Federal-Mogul* and *Floral Trade II* require the "all others" future cash deposit rate to be based on the most recent *assessment* rate, whether or not an administrative review is undertaken. *Federal-Mogul* was a challenge to the final determination of a first administrative review. 822 F. Supp. at 783. The court relied on both § 1675(a)(2) and § 353.22(e) in holding that, in cases where no administrative review is requested, the prior cash deposit rate from the LTFV investigation becomes the new assessment rate for "old shippers." *Id.* at 787–88. The court reasoned that "[i]n making a decision whether or not to request an administrative review * * *, the parties rely on the cash deposit rate then in force for those entries." *Id.* at 788.

In *Floral Trade II,* the court held that § 353.22(e) requires the continuation of a prior deposit rate when no administrative review is undertaken for a particular firm. 822 F. Supp. at 771. This continuation is necessary because the alternative would allow the deposit rate for all shippers to be changed by Commerce without a company-specific administrative review, an occurrence precluded by the regulations. *See Federal-Mogul,* 822 F. Supp. at 788.

*Federal-Mogul* and *Floral Trade II* did not require a particular rate for shippers entering the market for the first time during a particular review. For JST's entries during the third review period, Commerce has chosen to use the LTFV rate of 24 percent as the "previously ordered" cash deposit rate specified in § 353.22(e)(1). This is the only rate resulting from a final administrative determination. It is just such a finally determined rate that both 19 U.S.C. § 1675(a)(2) and 19 C.F.R. § 353.22(e)(1) contemplate. The preliminary rate of 1.82 percent, established in the first review period, has no validity. It is not a finally deter-

---

[5] JST was made aware that Commerce would be following § 353.22(e). In a letter to Commerce dated October 8, 1993, counsel for JST stated their understanding that "entries through the end of the review period (*i.e.,* entries through May 31, 1993) will be assessed antidumping duties at the deposit rate in effect when the entries were made in accordance with Section 353.22(e)(1) of the Department's regulations." Pub. Doc. 15, Def.'s Ex. 2.

mined rate for purposes of 19 U.S.C. § 1675(a)(2), and cannot control future entries. In accordance with the court's reasoning in *Federal-Mogul* and *Floral Trade II,* once a proper deposit rate has been set for any shipper, by a final administrative action or finalized judicial review of that action, that rate must become the new deposit and assessment rate until a company-specific review has taken place.

The court notes that Customs acted in accordance with its usual practice in liquidation JST's entries for the second review period before *Jeumont I* was decided. Commerce has asserted that,

> when no interested party requests an administrative review, the Department will instruct Customs to liquidate the entries for that review period at the rate deposited at the time of entry. *This automatic assessment will occur regardless of whether litigation regarding a prior administrative review or the LTFV investigation is pending.*

54 Fed. Reg. at 12,757 (emphasis added). That liquidation does not nullify the final results of the first review, however. To do so would be to render the outcome of *Jeumont I* moot. It has long been accepted that litigation as to an original LTFV investigation, which does not control assessment if a review is requested, is mooted by a subsequent review determination that changes the deposit rate. An incomplete or terminated review does not have the same effect. Here, the first review determination is analogous to mootable LTFV litigation because JST had no entries which were eligible for liquidation as a result of that review.

The court is not persuaded by JST's claim that it will suffer as a result of its reliance on the 1.82 percent rate. After the final determination of the first administrative review set the cash deposit rate at 4 percent for JST as a "new shipper," JST had no reason to rely on the preliminary 1.82 percent as its future cash deposit rate. This court's decision in *Jeumont I* gave JST further notice that a cash deposit rate other than 1.82 percent might be implemented. Finally, JST had the opportunity to request a review for the third review period during the pendency of this litigation and that of *Jeumont I.*[6] If it chooses to do so for any future period, it will then have its own specific rate.

### CONCLUSION

The court upholds the decision of the ITA and concludes that the absence of a request for review requires that 19 C.F.R. § 353.22(e)(1) be followed in this case so as to continue the only *finally determined* cash deposit rate. The liquidation of the entries during the second review period is complete as to those entries, but does not require the continuation of that liquidation rate for future entries. Until judicial review of

---

[6] JST also protests ABB's withdrawal of its administrative review request for the second review period. The statutory change from mandatory annual reviews to reviews upon request was designed to prevent unnecessary reviews. *See Federal-Mogul,* 822 F. Supp. at 788 (citing H.R. Conf. Rep. No. 1156, 98th Cong., 2d Sess. 181 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5220, 5298). ABB's obligation was not to protect JST but rather to discontinue the review if it was no longer necessary. In any case, JST obtained the benefit of the lower rate for entries made during the second review period.

the 24 percent rate set by Commerce is finalized, JST's future entries will be subject to that deposit rate. This court's remand decision in *Jeumont I* gave JST the opportunity to present arguments to mitigate the 24 percent rate. Once the appellate process is completed or no longer available to the parties, the rate resulting from *Jeumont I* will remain in effect until a review specific to JST's entries occurs.