916 F.2d 1571
 12 ITRD 1945
 The ASOCIACION COLOMBIANA DE EXPORTADORES DE FLORES,
Plaintiff-Appellee,
Association of Floral Importers of Florida, Flores Del Rio,
S.A., et al., Plaintiffs,
v.
The UNITED STATES, and Floral Trade Council of Davis,
California, Defendants-Appellants.
 Nos. 90-1131, 90-1140.
 United States Court of Appeals,
Federal Circuit.
 Oct. 18, 1990.
 
 Patrick F.J. MaCrory, Arnold & Porter, Washington, D.C., argued, for plaintiff-appellee. With him on the brief, were Spencer S. Griffith and Gwyn F. Murray.
 James R. Cannon, Jr., Stewart & Stewart, Washington, D.C., argued, for defendants-appellants. With him on the brief, were Eugene L. Stewart, Terence P. Stewart and Charles A. St. Charles.
 Jeanne E. Davidson, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendants-appellants. With her on the brief, were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief, were Wendell L. Willkie, II, General Counsel, Stephen J. Powell, Chief Counsel for Import Admin., Anne White and Andrea F. Dynes, Atty.-Advisors, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel.
 Before MARKEY,* Circuit Judge, FRIEDMAN, Senior Circuit Judge, and BROWN,** District Judge.
 FRIEDMAN, Senior Circuit Judge.
 
 
 1
 These appeals present the question of the authority of the Court of International Trade to enjoin the liquidation of entries in the amount specified in an antidumping order where, as a result of litigation before the Court of International Trade, the amount of duty thus specified was reduced but where the party seeking the injunction has not requested an annual review of the amount of the antidumping duty. The Court of International Trade enjoined liquidation at the higher duty. We affirm.
 
 
 2
 * A. The procedure for issuing an antidumping duty order comprises three steps involving two separate agencies, the International Trade Administration of the Department of Commerce ("Administration") and the International Trade Commission ("Commission"). Mitsubishi Elec. Corp. v. United States, 898 F.2d 1577, 1579 (Fed.Cir.1990). First, the Administration determines whether "foreign merchandise is being, or is likely to be" dumped in the United States, i.e., "sold in the United States at less than its fair value," 19 U.S.C. Sec. 1673(1) (1988). Second, the Commission determines whether "an industry in the United States" is "materially injured" or "threatened with material injury," or "the establishment of an industry in the United States is materially retarded" "by reason of" such imports. 19 U.S.C. Sec. 1673(2). Third, if both of these determinations are adverse to the imported merchandise, the Administration issues an antidumping duty order imposing upon the merchandise "an antidumping duty ... in an amount equal to the amount by which the foreign market value exceeds the United States price for the merchandise." 19 U.S.C. Sec. 1673.
 
 
 3
 Importers of the merchandise the antidumping order covers are required to "deposit ... estimated antidumping duties pending liquidation of entries of merchandise...." 19 U.S.C. Sec. 1673e(a)(3). "[E]ntries of [such] merchandise ... shall be liquidated in accordance with the [Administration's] determination" "[u]nless such liquidation is enjoined by the court...." 19 U.S.C. Sec. 1516a(c)(1) (1988). The Administration's regulations provide for automatic liquidation at the cash deposit rate unless an interested party requests review. 19 C.F.R. Sec. 353.53a(d) (1988) (now codified at 19 C.F.R. Sec. 353.22(e)(1) (1990)). Once an entry has been liquidated, the duty paid cannot be recovered even if the payor subsequently prevails in its challenge to the antidumping order. Zenith Radio Corp. v. United States, 710 F.2d 806, 809-10 (Fed.Cir.1983).
 
 
 4
 Each year, "on the anniversary of the date of publication of a countervailing duty order ..., if a request for such a review has been received after publication of notice of such review in the Federal Register, [the Administration] shall ... review, and determine ... the amount of any antidumping duty...." 19 U.S.C. Sec. 1675(a)(1)(B) (1988). This latter review is called the annual review.
 
 
 5
 The Administration has a regulation, 19 C.F.R. Sec. 353.53a(d) (1988) (now codified at 19 C.F.R. Sec. 353.22(e)(1) (1990)), which provides that
 
 
 6
 if the Secretary does not receive a timely request [for an annual review], the Secretary, without additional notice, will instruct the Customs Service to assess antidumping duties on the merchandise ... at rates equal to the cash deposit of (or bond for) estimated antidumping duties ... and to continue to collect the cash deposit previously ordered.
 
 
 7
 The statute provides for review in the Court of International Trade of (1) a "[f]inal affirmative determination" by the Administration or the Commission, 19 U.S.C. Sec. 1516a(a)(2)(B)(i) (1988), and (2) the determination made in an annual review, 19 U.S.C. Sec. 1516a(a)(2)(B)(iii).
 
 
 8
 The statute further provides that, in connection with review of a final antidumping duty determination, the Court of International Trade "may enjoin the liquidation of some or all entries of merchandise covered by [the] determination ... upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances." 19 U.S.C. Sec. 1516a(c)(2).
 
 
 9
 B. In March 1987, in response to a petition filed by the appellant Floral Trade Council of Davis, California (Council), an association of United States flower growers, the Administration issued an antidumping duty order covering the sales of certain imported flowers from Colombia that the Administration found were made at less than fair value. Certain Fresh Cut Flowers from Colombia, 52 Fed.Reg. 6842 (Mar. 5, 1987), amended, 52 Fed.Reg. 8492 (Admin. Mar. 18, 1987). For a group of "all other" producers (all but 12 specifically named flower growers), the Administration found that the dumping margin was 4.4 percent and established that amount as the deposit rate.
 
 
 10
 The final less-than-fair value determination was challenged in the Court of International Trade by both the Council (as being too low), and by an association of producers, exporters and importers of Colombian flowers, the appellee The Asociacion Colombiana de Exportadores de Flores (Asociacion) (as being too high). Both actions were consolidated by that court [No. 87-04-00622]. Although the court upheld the antidumping duty order, the original deposit rate for the "all other" producers was lowered from 4.4 percent to 3.1 percent. Asociacion Colombiana de Exportadores de Flores v. United States, 704 F.Supp. 1114, after remand 717 F.Supp. 834 (Ct.Int'l Tr.1989), aff'd, 901 F.2d 1089 (Fed.Cir.1990).
 
 
 11
 On the first anniversary of the antidumping duty order, while the merits of that order were being litigated, a number of Colombian producers requested the Administration to conduct an administrative review of the rate at which their entries should be liquidated during the annual review period. The Council requested review of six named exporters and producers and of numerous unnamed Colombian producers. The Administration initiated the annual reviews, except for the unnamed producers. Pursuant to 19 C.F.R. Sec. 353.53a(d) (now codified at 19 C.F.R. Sec. 353.22(e)(1)), the Administration ordered the United States Customs Service (Customs) to liquidate all entries for which review had not been requested.
 
 
 12
 The Council then filed suit in the Court of International Trade challenging the Administration's refusal to initiate reviews of the unnamed producers. The court in June 1988 suspended the liquidation of the first-review period entries while the judicial action was pending, see Floral Trade Council v. United States, 692 F.Supp. 1387 (1988), after remand, 707 F.Supp. 1343 (Ct.Int'l Tr.), aff'd, 888 F.2d 1366 (Fed.Cir.1989). This suspension of liquidation remained in effect until the Court of International Trade rejected the Council's contentions in February 1989, see Floral Trade Council, 707 F.Supp. 1343, and this court affirmed that decision in November 1989, see Floral Trade Council, 888 F.2d 1366.
 
 
 13
 At the same time that the Council obtained the injunction against liquidation, Asociacion sought from the Court of International Trade a temporary restraining order directing Customs to suspend the liquidation of all entries other than those already subject to administrative review. Because the court already had granted the Council's request for the same relief, it denied Asociacion's request for an injunction, but without prejudice to Asociacion's right to reapply to the court for injunctive relief. Order of July 17, 1989 Denying Plaintiff's Motion for an Injunction of Liquidation, CIT Court No. 87-04-00622, at 2.
 
 
 14
 In October 1989, in anticipation of this court's affirmance in the Council's appeal, the Court of International Trade granted Asociacion's renewed request for an injunction. Asociacion Colombiana de Exportadores de Flores v. United States, 724 F.Supp. 969 (Ct.Int'l Tr.1989). That injunction, which became effective on December 3, 1989, after we affirmed the Court of International Trade in Floral Trade Council, 888 F.2d 1366, is the subject of the present appeal. The injunction bars the liquidation of entries for the first review period at the original 4.4 percent rate, which subsequently was reduced to 3.1 percent.
 
 
 15
 In its opinion granting the injunction, the Court of International Trade first held that Asociacion's failure to seek an annual review for the entries, the liquidation of which it sought to enjoin, did not bar granting the injunction. 724 F.Supp. at 971. The court then held that under the four factors governing the issuance of preliminary injunctions, Asociacion was entitled to an injunction against liquidation of the entries for the period of the first annual review at the 4.4 percent rate specified in the original antidumping order. Id. at 971-73.
 
 
 16
 These factors are that the party seeking the injunction must demonstrate: "(1) that it will be immediately and irreparably injured; (2) that there is a likelihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors the petitioner." Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed.Cir.1983). The Court of International Trade held that because it had "issued a final judgment sustaining an [Administration] remand determination reflecting lower duty rates than originally ordered," "success on the merits ... is not an issue." 724 F.Supp. at 971. After reviewing in detail the applicability of the three other factors to this case, the court concluded that there were "at least three factors for injunctive relief strongly in plaintiffs' favor, and one factor at least arguably in their favor." Id. at 972.
 
 II
 
 17
 A. The issue is whether a party who challenges in the Court of International Trade an antidumping order is precluded from obtaining an injunction against liquidation of its entries of merchandise made during the year following the antidumping order because it did not request the Administration to conduct an administrative review of the amount of the antidumping duty properly payable during that year.
 
 
 18
 The appellants rely upon Regulation 353.53a(d) (now codified at 19 C.F.R. Sec. 353.22(e)(1)) which, as noted, provides for liquidation at the deposit rate of all entries made during an annual review period for which no request for an annual review has been made. They contend that the only way the liquidation of the entries made during that annual review period may be stayed is by requesting an annual review, which stays liquidation; and that unless such review is requested and made, the Court of International Trade has no authority to stay the liquidation.
 
 
 19
 The appellants thus have invoked "the exhaustion-of-administrative-remedies doctrine--that judicial review of administrative action is inappropriate unless and until the person seeking to challenge that action has utilized the prescribed administrative procedures for raising the point." Sharp Corp. v. United States, 837 F.2d 1058, 1062 (Fed.Cir.1988).
 
 
 20
 There is a well-settled exception to the exhaustion-of-administrative-remedies doctrine, however, which applies in this case. A party need not exhaust his administrative remedies where invoking such remedies would be futile. Bendure v. United States, 554 F.2d 427, 431, 213 Ct.Cl. 633 (1977) ("Courts will, as a general rule, refuse to require administrative exhaustion when resort to the administrative remedy would be futile, including situations where plaintiffs would be 'required to go through obviously useless motions in order to preserve their rights.' ") (citations omitted). See also Cooper v. Marsh, 807 F.2d 988, 990 (Fed.Cir.1986) (Plaintiff challenging court martial conviction "need seek review only before military tribunals empowered to provide the remedy sought"); Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 105 (D.C.Cir.1986) (referring to "the futility exception to the exhaustion requirement" and quoting the statement by Professor Davis in 3 K. Davis, Administrative Law Treatise Sec. 20.07 (1958), that the exception applies where "following the administrative remedy would be futile because of certainty of an adverse decision.").
 
 
 21
 In the present case, it would have been futile for Asociacion to have sought an annual review because the Administration's regulations provide that such review "normally will cover, as appropriate, entries, exports, or sales of the merchandise during the 12 months immediately preceding the most recent anniversary month [the calendar month in which the anniversary of the date of publication of the order or finding occurs]." 19 C.F.R. Sec. 353.53a(b)(1) (1988) (now codified at 19 C.F.R. Sec. 353.22(b)(1) (1990)). Similarly, "[f]or requests received during the first anniversary month after publication of an order or suspension of investigation, the [annual review] will cover, as appropriate, entries, exports, or sales during the period from the date of suspension of liquidation under this part or suspension of investigation to the end of the month immediately preceding the first anniversary month." 19 C.F.R. Sec. 353.53a(b)(2) (1988) (now codified at 19 C.F.R. Sec. 353.22(b)(2) (1990)). In either situation, the Administration reviews only activity subsequent to the publication of an antidumping order.
 
 
 22
 The only issue Asociacion raised was the correctness of the dumping margins found in the Administration's original antidumping order. The Administration would not have considered that question in an annual review which, as noted, is limited to "review[ing] and determin[ing] ... the amount of any antidumping duty ..." for the review period. 19 U.S.C. Sec. 1675(a)(1)(B).
 
 
 23
 Since Asociacion never has contended that the amount of antidumping duty for the annual review period should be less than that in the original antidumping order, but only that the latter amount was excessive, Asociacion had no reason to request an annual review and no basis for doing so. Indeed, for Asociacion to have requested an annual review solely to protect its right to seek a judicial injunction against liquidation would have been inconsistent with a major purpose underlying a 1984 amendment of the statute.
 
 
 24
 Prior to 1984, annual reviews were required for all antidumping orders, whether or not anyone requested such a review. In section 611 of the Trade and Tariff Act of 1984, however, this provision was amended to require an annual review only "if a request for such a review has been received." Pub.L. No. 98-573, tit. VI, Sec. 611(a), 98 Stat. 2948, 3031 (codified at 19 U.S.C. Sec. 1675(a)(1) (1988)). As this court recently noted in Floral Trade Council v. United States, 888 F.2d 1366, 1369 (Fed.Cir.1989), a House Report on the 1984 amendment
 
 
 25
 asserted that one purpose for a limitation on reviews was to:
 
 
 26
 reduce the administrative burden on the Department of Commerce of automatically reviewing every outstanding order even though circumstances do not warrant it or parties to the case are satisfied with the existing order. The increasing number of outstanding orders subject to review each year imposes an unnecessarily heavy burden on limited staff resources.
 
 
 27
 (Citations omitted.)
 
 
 28
 Requiring Asociacion to have requested an annual review in which the Administration would not consider the only issue that Asociacion was litigating before the Court of International Trade would thwart and defeat that purpose and be inconsistent with a major congressional reason for providing that the Administration need conduct an annual review only if review has been requested.
 
 
 29
 The appellants' reliance upon Regulation 353.53a(d) is misplaced. As noted, that regulation provides that if no annual review is requested, the entries for that review period will be liquidated at the level specified in the antidumping order but that if such review is sought, liquidation will be stayed until the review is completed.
 
 
 30
 That regulation, however, is directed to the situation where the parties both accept the dumping order and do not challenge the amount of the antidumping duty. It does not address the different question in the present case, which is whether the failure to request an annual review bars the Court of International Trade, in a suit challenging the Commission's antidumping order, from enjoining liquidation at the amount specified in the antidumping order where that amount has been held excessive and has been reduced.
 
 
 31
 In the present case, there has already been a definitive determination that the original dumping margin of 4.4 percent was too high, and that the proper original margin should have been 3.1 percent. The government, however, seeks to liquidate the entries for the initial review period at the original, and now erroneous, level of 4.4 percent, solely because Asociacion failed to request an annual review, in which it could not have litigated the validity of that original dumping margin. To permit the government to do so would be unfair to Asociacion. Nothing in the statute even suggests that Congress intended to produce such an inequitable result.
 
 
 32
 As noted in Cambridge Lee Indus., Inc. v. United States, 916 F.2d 1578, also decided today, the Court of International Trade in that case stated that there has been "a continuing split of authority within" that court over "whether a party must request an annual administrative review in order to obtain an injunction against liquidation," and that the conflict "will continue until the Federal Circuit has an opportunity to resolve this issue." Cambridge Lee Indus., Inc. v. United States, 723 F.Supp. 1518, 1520 (Ct.Int'l Trade 1989).
 
 
 33
 We resolve that issue today and hold that the failure of a party who challenges the merits of an antidumping order before the Court of International Trade to have sought an annual review does not preclude that court from enjoining liquidation of entries made during the annual review period at the rate specified in the original antidumping order. Our holding is limited to situations in which the original antidumping order is being challenged in the court suit. We do not question the authority of the Administration, pursuant to its regulation, to liquidate entries for an annual review period at the rate set in the original antidumping duty order when there has been no challenge to the validity of that order and no request for an annual review.
 
 
 34
 B. The government contends, however, that the statutory provisions authorizing the Court of International Trade to issue injunctions do not cover this case. According to the government, the court may issue an injunction only (1) against the antidumping order itself, in a proceeding challenging that order, or (2) against liquidation of entries in a proceeding challenging the result of an annual review. The government concludes that in connection with a proceeding challenging the antidumping order itself, the court cannot enjoin liquidation of duties for which an annual review proceeding could have been initiated.
 
 
 35
 As we have already shown, in an annual review the Administration would not review the only issue that Asociacion raised in its suit: the validity of dumping margins in the original antidumping order. Furthermore, the statutory language does not support the government's narrow construction of it.
 
 
 36
 The government relies on section 1516a(c)(2), which provides that "[i]n the case of a determination described in [19 U.S.C. Sec. 1516a(a)(2) ] by [the Administration], the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of [the Administration], upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances." The government contends that the words "covered by a determination of [the Administration]" refer only to (1) a final antidumping duty determination or (2) a determination made in an annual review, and that because the duties for the first annual review period were not within either determination, the court could not enjoin their liquidation.
 
 
 37
 The flaw in the government's argument is that without a valid antidumping determination in the original order, there can be no valid determination in a later annual review. As the Court of International Trade pointed out in Sonco Steel Tube Div., Ferrum, Inc. v. United States, 698 F.Supp. 927, 928 (1988), "[a]n annual review does not have independent existence, it requires a valid underlying order." The statute authorizes the Court of International Trade to enjoin liquidation of entries covered by an Administration antidumping order, the validity of which is being judicially challenged or which has been judicially invalidated.
 
 
 38
 There is no reason to give the broad statutory language the narrow meaning the government ascribes to it. To the contrary, the statute broadly empowers the Court of International Trade to enjoin liquidations of entries covered by determinations of the Administration. Since the 4.4 percent antidumping duty set in the original antidumping order has now been determined to have been excessive, the statute authorized the Court of International Trade to enjoin liquidation of entries for the annual review period at that improper rate.
 
 III
 
 39
 The appellants also contend that the Court of International Trade erred in holding that Asociacion met the four-part test for obtaining an injunction. The arguments basically are a reargument of the factual and policy issues presented to that court.
 
 
 40
 The grant or denial of the type of injunction the Court of International Trade entered in this case lies largely within the discretion of the trial court. Cf. S.J. Stile Assoc. Ltd. v. Snyder, 646 F.2d 522, 525, 68 C.C.P.A. 27 (1981). We find it unnecessary to discuss these contentions in detail. We conclude that the Court of International Trade did not abuse its discretion in granting the injunction in this case.
 
 CONCLUSION
 
 41
 The judgment of the Court of International Trade granting the injunction is
 
 
 42
 AFFIRMED.
 
 
 
 *
 Circuit Judge Markey vacated the position of Chief Judge on June 27, 1990
 
 
 **
 Garrett E. Brown, Jr., of the United States District Court for the District of New Jersey, sitting by designation