MITSUBOSHI BELTING LTD. AND MBL (USA) CORP., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND GATES RUBBER CO., INTERVENOR-DEFENDANT

Court No. 93–06–00356

(Decided October 22, 1993)

*Sonnenberg, Anderson & Rodriguez (Steven P. Sonnenberg, Paul S. Anderson* and *Jacqueline M. Paez)* for the plaintiffs.
*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Michael S. Kane)*; and *Stacy J. Ettinger,* U.S. Department of Commerce, of counsel, for the defendant.
*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart* and *James R. Cannon, Jr.)* for the intervenor-defendant.

OPINION

AQUILINO, *Judge:* Following publication by the International Trade Administration, U.S. Department of Commerce ("ITA") of *Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Japan; Final Results of Antidumping Duty Administrative Review,* 58 Fed.Reg. 30,018 (May 25, 1993), the above-encaptioned action commenced with timely service and filing of a summons and complaint. These pleading(s) were accompanied by an application for a preliminary injunction, suspending liquidation of the entries of plaintiffs' indicated merchandise covered by the administrative review.

The defendant responded with papers in opposition to such suspension and in support of dismissal of this action for lack of jurisdiction.

I

On its face, the complaint does not contest the final results *per se* of the administrative review. Rather, plaintiffs' precise prayer for relief is that the court

> hold unlawful the issuance of liquidation instructions by the ITA pending the decision in *Bando Chemical Industries Ltd. * * * v. United States,* CIT Court No. 89–07–00399.
>
> Furthermore, upon a decision in *Bando* by the CIT that the ITC record did not support a finding of threat of material injury and that such a finding is not in accordance with the law, the Plaintiff respectfully requests this Court to hold unlawful the Final Results by the ITA.

The complaint correctly alleged that the *Bando* case was pending in this Court of International Trade and that it contested

> the final affirmative determination rendered by the U.S. International Trade Commission ("ITC") in Industrial Belts from Japan, Investigation No. 731–TA–414.
>
> 11. If the CIT finds in *Bando* that there was not substantial evidence on the record to support a finding of threat of material injury

to a domestic industry from imports of industrial belts imported from Japan, and that such finding is otherwise not in accordance with law, the Antidumping Duty Order issued by the Commerce Department will be revoked, and no antidumping duties will be assessed on industrial belts imported from Japan.

However, subsequent to the filing of the complaint, on August 6, 1993 the court handed down Slip Op. 93–150, 17 CIT 798, in *Bando* (and in *Pirelli Trasmissioni Industriali, S.p.A. v. United States,* CIT No. 89–07–00430), affirming the views after remand of ITC Commissioner David B. Rohr that the domestic industries for power-transmission belts are threatened with material injury by reason of imports from Japan (and Italy). The effect of this affirmance was to confirm the determination of material injury by the ITC. *See generally Bando Chemical Industries, Ltd. v. United States,* 16 CIT 133, 787 F.Supp. 224 (1992).

The issuance of Slip Op. 93–150 was followed by a registered letter to the court from plaintiffs' counsel, pointing out that the parties in those actions had 60 days to appeal the court's judgments therein and also that:

If the plaintiffs in *Bando Chemical* do not appeal the CIT's decision, there will be no case or controversy in the present action. In that event, plaintiffs would voluntarily dismiss the present action.

The stated, salutary purpose of the letter was orderly procedure. After the *Bando* (but not the *Pirelli)* plaintiffs did indeed file a notice of appeal, this court conferred with the parties herein and concluded to hold a hearing on October 14, 1993 on plaintiffs' application for a preliminary injunction and defendant's motion to dismiss.

## II

As indicated above, the focus of defendant's original papers in support of dismissal is lack of jurisdiction. However, in their subsequent reply and at the hearing counsel broadened the bite of the motion to dismiss to encompass failure to state a claim upon which relief can be granted.

## A

The gist of the government's position as to jurisdiction is (1) that 19 U.S.C. § 1516a(a)(2)(A) permits interested parties to proceedings like the above-referenced administrative review to contest in court "any factual findings or legal conclusions upon which the [review's resultant] determination is based", to quote from that section of the statute, but (2) that the complaint does not in fact challenge any such findings or conclusions.

It is clear that the plaintiffs do not aim this action at either of those two areas. Rather, their complaint is concerned with the effect of the ITA's determination, which could lead to liquidation of their entries before the lawfulness of the underlying antidumping-duty order is finally

determined on judicial review. The plaintiffs therefore rely primarily on 19 U.S.C. § 1516a(c)(2), to wit:

**(c) Liquidation of entries**

  *    *    *    *    *    *    *

**(2) Injunctive relief**

 In the case of a determination described in paragraph (2) of subsection (a) of this section by the [ITA] * * *, the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of the [ITA] * * * upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances.

Any waiver of a sovereign's immunity is to be strictly construed. However, the construction for which defendant's counsel argue in this action is stricter than either the statutory waiver or the case law requires. On its face, and necessarily, foregoing subsection (c)(2) is tied to determinations described in subsection (a)(2), including that which precipitated plaintiffs' complaint herein, but not so narrowly as to require the reading the defendant now presses. Indeed, the grant of exclusive jurisdiction to this Court of International Trade over matters such as this by the Customs Courts Act of 1980 refers broadly to "any civil action commenced under section 516A of the Tariff Act of 1930." 28 U.S.C. § 1581(c).

In exercising that jurisdiction pursuant to the Trade Agreements Act of 1979, as amended, and the 1980 enactment, the court in *Sonco Steel Tube Div., Ferrum, Inc. v. United States,* 12 CIT 990, 698 F.Supp. 927 (1988), rejected a restrictive reading of those statutes by government counsel. In attempting in that case to limit the scope of injunctive relief pursuant to 19 U.S.C. § 1516a(c)(2), they had argued that such relief could be granted in regard to ITA determinations after administrative review under 19 U.S.C. § 1675 and not to predicate agency determinations of sales at less than fair value. The plaintiff had challenged the antidumping-duty order[1] but had not requested any administrative review thereof, thereby making its entries of covered goods susceptible to liquidation at the rate developed during the ITA's original investigation. The count held injunction of liquidation in such a situation to comply with the statutory scheme. *See* 12 CIT at 995, 698 F.Supp. at 931.

In *Asociacion Colombiana de Exportadores de Flores v. United States,* 916 F.2d 1571, 1577 (Fed.Cir. 1990), the court of appeals relied on this decision in *Sonco:*

 * * * The statute authorizes the Court of International Trade to enjoin liquidation of entries covered by an [ITA] antidumping order, the validity of which is being judicially challenged or which has been judicially invalidated.

---

[1] *See Sonco Steel Tube Div., Ferrum, Inc. v. United States,* 12 CIT 745, 694 F.Supp. 959 (1988).

There is no reason to give the broad statutory language the narrow meaning the government ascribes to it. To the contrary, the statute broadly empowers the Court of International Trade to enjoin liquidations of entries covered by determinations of the [ITA].

The facts in that case revealed continuing judicial review of an antidumping-duty order at the time of commencement of an administrative review thereof. Upon such initiation, the ITA ordered liquidation of all entries for which agency review had not been requested. And it was that order which was held within the jurisdiction of the court(s) to enjoin.

In fact, the Federal Circuit began its opinion in *Asociacion Colombiana* by referring to the "authority" of the Court of International Trade to enjoin liquidation. 916 F.2d at 1572. This reference itself was in keeping with the discussion in *Sonco*, wherein the court had sought to remind counsel:

> It is probably a mischaracterization to label these arguments "jurisdictional" in the traditional sense of that term. Rather, the parties are arguing about what specific actions the court may take in a particular case according to the statutory scheme and Congressional intent. No one has argued that this court lacks personal jurisdiction over the parties or that the court lacks subject matter jurisdiction over the underlying case.

12 CIT at 991, n. 1, 698 F.Supp. at 928, n. 1.

Indeed, it is also appropriate to remind defendant's attorneys that in an earlier action between the same parties at bar and involving the same underlying antidumping-duty order, the government conceded jurisdiction, if not under 28 U.S.C. § 1581(c), then pursuant to section 1581(i). *See MBL (USA) Corporation v. United States,* 14 CIT 161, 164 and n. 9, 733 F.Supp. 379, 382 and n. 9 (1990). Whatever defendant's posture now, the court is not persuaded that it lacks jurisdiction over the above-encaptioned action, which appears to be an extension of this litigation.

## B

This circumstance also makes it necessary to recall that *MBL (USA) Corporation v. United States* resulted in partial summary judgment for the government, dismissing the second count of plaintiffs' amended complaint. To recite salient facts in the record, power-transmission belts from Japan, including those of the plaintiffs, were the object of a dumping investigation by the ITA and the ITC. The corporations participated in the administrative proceedings as parties respondent[2], with their counsel having filed a notice of appearance before the ITC, stating, among other things, that they "intend[ed] to participate fully in the [    ]

---

[2] Section 1677(9) of 19 U.S.C. defines "interested party" for purposes of Title VII of the Tariff Act of 1930, as amended, in part as

(A) a foreign manufacturer, producer, or exporter, or the United States importer, of merchandise which is the subject of an investigation under this subtitle or a trade or business association a majority of the members of which are importers of such merchandise[.]

investigations and to file briefs and statements with the Commission."
Thereafter, however, those lawyers sent a letter to the ITC reporting:

> On instructions from our clients * * *, we hereby withdraw their appearance as parties in this investigation. We likewise withdraw the notice of appearance at the hearing in this matter filed last week. Our clients will not be filing briefs in this matter, through counsel or otherwise, nor will they or their attorneys or representatives be appearing at the hearing in this matter.

The Commission reacted accordingly, serving copies of this withdrawal statement on all other parties.

The investigations resulted in publication of *Antidumping Duty Order of Sales at Less Than Fair Value; Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Japan,* 54 Fed.Reg. 25,314 (June 14, 1989), and then in the service and filing of a complaint in court by the plaintiffs, contesting the effective date of the order. Thereafter, the plaintiffs filed the amended complaint, adding a second count which sought to contest the affirmative injury determination of the ITC underlying the order. The defendant responded with a motion for summary judgment on that count, arguing, among other grounds, that the plaintiffs lacked standing to contest the injury determination.

This court concurred. Among other things, the court found that the plaintiffs had abandoned the proceedings before the Commission and recited the principle that issues not raised in a forum *nisi prius* cannot be raised on appeal. The court further found that their amended complaint had been served and filed beyond the time allowed to invoke judicial review and concluded that their summons and original complaint had not stopped the running of the 30–day statutory period as against the ITC, quoting *Georgetown Steel Corporation v. United States,* 801 F.2d 1308, 1312 (Fed. Cir. 1986):

> Since section 1516a(a)(2)(A) specifies the terms and conditions upon which the United States has waived its sovereign immunity in consenting to be sued in the Court of International Trade, those limitations must be strictly observed and are not subject to implied exceptions. *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). If a litigant fails to comply with the terms upon which the United States has consented to be sued, the court has no "jurisdiction to entertain the suit." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed. 2d 607 [1980] (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)).

Of course, it is also axiomatic that, when deciding a motion to dismiss, a complaint is to be liberally construed in favor of a plaintiff. *E.g., Jenkins v. McKeithen,* 395 U.S. 411, 421–22, *reh'g denied,* 396 U.S. 869 (1969), and cases cited therein. Taking that approach in this action, however, does not lead the court to conclude that plaintiffs' present pleading raises any issue not already decided against them in *MBL*

*(USA) Corporation v. United States, supra.* The aim then and now is judicial vacation of the ITC's affirmative determination. Some interested parties to the proceedings before the Commission have preserved their standing to pursue that relief. The plaintiffs, on the other hand, did not and have not. The formal adjudication of their lack of standing in 1990 has not been overcome by the current complaint.[3] That is, the court concludes that it fails to state a claim upon which relief can be granted. Indeed, even if the question of standing were not foreclosed as a matter of law, the plaintiffs have failed to show how the issuance of liquidation instructions by the ITA would be unlawful as to them simply because the parties in other litigation are still availing themselves of the right to further judicial appeal. As plaintiffs' counsel have indicated in their registered letter herein, and quoted above, without that appeal in *Bando* there would be no conceivable case or controversy in the present action.

## III

To summarize the foregoing, plaintiffs' complaint is too attenuated to amount to a claim upon which any relief can now be granted[4], and defendant's motion to dismiss must therefore be granted. Judgment will enter accordingly.

---

[3] In fact, plaintiffs' memorandum in opposition to defendant's motion to dismiss admits (at page 10) that they "do not have standing to challenge the ITC's affirmative injury determination."

[4] Having reached this conclusion, the court need not address plaintiffs' application for a preliminary injunction and simply notes in passing that the merits of its Slip Op. 93–150 in *Bando* and *Pirelli* do not favor the plaintiffs herein and that there does not seem to be a substantial likelihood of reversal on appeal. *Cf. FMC Corporation v. United States,* No. 92–1366, Slip Op. at 6–7 (Fed.Cir. Aug. 19, 1993) ("Absent a showing that a movant is likely to succeed on the merits, we question whether the movant can ever be entitled to a preliminary injunction unless some extraordinary injury or strong public interest is also shown").