**UCF AMERICA INC. and Universal Automotive Co., Ltd., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**The Timken Company, Defendant–Intervenor.**

Slip Op. 96–42.
Court No. 92–01–00049.

United States Court of International Trade.

Feb. 27, 1996.

---

Venable, Baetjer, Howard & Civiletti, John M. Gurley and Lindsay B. Meyer, for plaintiffs.

Frank W. Hunger, Washington, DC, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Patricia L. Petty, Washington, DC; of counsel: Edward Reisman, Mary P. Michel and Lucius B. Lau, Washington, DC, Attorney–Advisors, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, Charles A. St. Charles and James R. Cannon, Jr., Washington, DC, for defendant-intervenor, The Timken Company.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, UCF America Inc. and Universal Automotive Co., Ltd. ("UCF"), contest aspects of the affirmative determination by the United States Department of Commerce, International Trade Administration ("Commerce"), in *Final Results of Antidumping Duty Administrative Review: Tapered Roller Bearings and Parts Thereof From the People's Republic of China* ("Final Results"), 56 Fed.Reg. 67,590 (Dec. 31, 1991).

### Background

On August 25, 1986, The Timken Company ("Timken"), a U.S. domestic manufacturer of tapered roller bearings and parts ("TRBs"), petitioned Commerce to investigate whether imports of TRBs from the People's Republic of China ("PRC") were being sold in the United States at less than fair value ("LTFV"). Consequently, Commerce initiated an antidumping investigation of China National Machinery & Equipment Import and Export Corporation ("CMEC"), an exporter of PRC-origin TRBs, and Premier Bearing & Equipment, Ltd. ("Premier"), a Hong Kong-based trading company that exports PRC-produced TRBs to the United States. *Tapered Roller Bearings, Rollers and Parts Thereof, Finished or Unfinished, From the People's Republic of China; Initiation of Antidumping Duty Investigation*, 51 Fed.Reg. 33,283 (Sept. 19, 1986). CMEC and Premier were believed to account for all sales of TRBs from the PRC. *Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, From the People's Republic of China; Preliminary Determination of Sales at Less than Fair Value* ("LTFV Preliminary Results"), 52 Fed.Reg. 3,833, 3,834 (Feb. 6, 1987). Commerce determined that the PRC is a state-controlled-economy country. *LTFV Preliminary Results*, 52 Fed. Reg. at 3,834. Commerce established a margin only for Premier and an "all others" rate for all other TRB exporters not specifically reviewed. *Tapered Roller Bearings From the People's Republic of China; Final Determination of Sales at Less Than Fair Value* ("LTFV Final Results"), 52 Fed.Reg. 19,748 (May 27, 1987).

The resulting antidumping duty order covered Premier at 0.97% and all other unreviewed companies, excluding CMEC, at 0.97%. *Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, From the People's Republic of China*, 52 Fed.Reg. 22,667 (June 15, 1987). The LTFV Final Results were successfully challenged and this Court remanded the case to Commerce for redetermination. *Timken Co. v. United States*, 12 CIT 955, 699 F.Supp. 300 (1988).

Upon redetermination, Commerce established a margin of 4.69% for CMEC, confirmed Premier's rate of 0.97% and set a new "all others" rate of 2.96%. The Court affirmed Commerce's redetermination in *Timken Co. v. United States*, 13 CIT 238, 714 F.Supp. 535 (1989), *aff'd*, 894 F.2d 385 (Fed. Cir.1990). The Court of Appeals for the Federal Circuit (CAFC) upheld CMEC's margin and on February 26, 1990, Commerce published an amended dumping order. *Tapered Roller Bearings From the People's Republic of China; Amendment to Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order in Accordance with Decision Upon Remand*, 55 Fed. Reg. 6,669 (1990).

On July 26, 1990, Commerce initiated the third administrative review at issue, naming only Premier and CMEC. *Initiation of Antidumping Duty Administrative Reviews*, 55 Fed.Reg. 30,490 (1990). The investigation expanded to eight companies and, preliminarily, the "all others" rate was set at 15.61% *ad valorem*, a rate equal to the margin found for one of the eight reviewed companies, Jilin Machinery Import and Export Corporation ("Jilin"). *Preliminary Results of Antidumping Duty Administrative Review: Tapered Roller Bearings and Parts Thereof From the People's Republic of China*, 56 Fed.Reg. 50,-309, 50,311–312 (Oct. 4, 1991). The final determination established company-specific margins for each of the reviewed companies, including CMEC and Premier, and assigned an "all others" rate of 8.83%, a rate equal to Jilin's margin. *Final Results*, 56 Fed.Reg. at 67,597. The Court remanded the case to Commerce for redetermination in *UCF America, Inc. v. United States*, 18 CIT ——,

870 F.Supp. 1120, 1129 (1994), instructing Commerce to "reinstate the 'all others' cash deposit rate applicable prior to these Final Results for entries of unreviewed companies which have not become subject to assessment pursuant to a subsequent administrative review."

On March 9, 1995, Commerce filed with this Court its *Redetermination on Remand, Final Results of Sales at Less Than Fair Value, Tapered Roller Bearings and Parts Thereof From the People's Republic of China, 1989–1990 Administrative Review (A–570–601), UCF America, Inc. v. United States, Court No. 92–01–00049 and Slip Op. 94–184 (Dec. 5, 1994) ("Redetermination on Remand ")*.

On redetermination, Commerce states that it has now reinstated the "all others" cash deposit rate applicable prior to these Final Results for entries of unreviewed companies which have not become subject to assessment pursuant to a subsequent administrative review. *Redetermination on Remand* at 1. However, Commerce calls this rate a "PRC rate." Commerce also corrected the arithmetic error related to foreign inland freight costs for Jilin.

### Discussion

Commerce's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

### 1. *The "All Others" Rate*

Commerce concedes that the Final Results "incorrectly established an 'all others' rate of 8.83 percent." *Redetermination on Remand* at 4. In reinstating the 2.96% "all others" rate, Commerce notes that its reasoning differs from that of *Federal–Mogul Corp. v. United States*, 17 CIT 442, 822 F.Supp. 782,

784–88 (1993), on which the Court relied in *UCF America,* 18 CIT at ——, 870 F.Supp. at 1120. *Redetermination on Remand* at 4. Commerce states: "Where the Department reviews entries from a non-market economy, *it issues a non-market economy rate (here, the 'PRC rate') in lieu of an 'all others' rate.* This rate is 2.96 percent." *Id.* at 1 (emphasis added).

Commerce elaborates:

In 1991, the Department established a new policy concerning non-market economies. Under this policy, all non-market economy exporters are presumed to be a single enterprise controlled by the central government, which receives a single rate (the "PRC rate"). *See Final Determination of Sales At Less Than Fair Value: Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, From the People's Republic of China* (56 FR 241, Jan. 3, 1991); *Final Results of Antidumping Duty Administrative Review: Iron Construction Castings from the People's Republic of China* (56 FR 2742, Jan. 24, 1991). A company is entitled to a separate rate only if it establishes that it is not subject to *de jure* or *de facto* control by the central Government. *See Final Determination of Sales At Less Than Fair Value: Silicon Carbide from the People's Republic of China* (59 FR 22585, May 2, 1994).

*Id.* at 2–3.

[C]onsistent with our presumption of government control of exporters in non-market economy cases, we issue one rate applicable to all exports from non-market countries, except for exports by companies found to be entitled to separate rates. In this case, the PRC rate may only be changed pursuant to a review of a company not receiving a separate rate. Under our policy, any company not entitled to a separate rate is considered to be part of the presumptive "single entity" representing all PRC exporters. Therefore, if a review only covers companies entitled to separate rates, the PRC rate remains the same because no part of the presumptive single entity is subject to review.

Prior to the 1989–90 review, it was not the Department's practice to treat all PRC exporters as a single enterprise controlled by the central government. Thus, the Department automatically issued separate rates for all reviewed companies and issued an "all others" rate for unreviewed companies. Then, as discussed above, in 1991 the Department established its practice of assigning a single rate for all exports from the PRC. Therefore, *the final results of the 1989–90 review should have referred to a PRC rate, not an "all others" rate.* Since all respondents in the 1989–90 review qualified for separate rates, no reviewed company was part of the presumptive "single entity." Thus, the PRC rate should have remained unchanged. The last rate applicable to PRC exporters was the "all others" rate from the investigation. Therefore, this rate should have been the PRC rate.

In conformity with the Court's order, *we have reinstated the PRC rate for the third review at 2.96 percent. This rate will be used for both assessment and cash deposit purposes.*

*Id.* at 4–5 (emphasis added).

UCF avers that the unamended "all others" 0.97% rate applies to its pre-February 26, 1990 entries for purposes of assessment. Pls.' Comments on Redetermination on Remand at 1–2.

Commerce disagrees, maintaining that "the Department must assess all entries subject to the PRC rate at 2.96 percent for the entire third period of review." *Redetermination on Remand* at 9, Comment 3. Notably, this position differs from that expressed in the draft of these results where Commerce stated:

Due to the *Amendment to Final Determination in Accordance with Decision Upon Remand* (55 FR 6669, Feb. 26, 1990), the PRC rate increased during the course of the 1989–90 review. *For assessment purposes, the PRC rate is 0.97 percent for the period May 12, 1989 to February 25, 1990 and 2.96 percent for the period February 26, 1990 to May 31, 1990. For future deposit purposes, the PRC rate is 2.96 percent.*

*Draft Redetermination on Remand, Final Results of Sales at Less Than Fair Value, Tapered Roller Bearings and Parts Thereof From the People's Republic of China, 1989–1990 Administrative Review (A–570–601), UCF America, Inc. v. United States, Court No. 92–01–00049 and Slip Op. 94–184 (Dec. 5, 1994),* Remand R. Public Doc. No. 1 at 5 (emphasis added). Commerce explains that the injunction which Timken obtained suspending liquidation of TRBs from the PRC pending a final court decision on CMEC's dumping rate makes the 2.96% "all others" rate published in the February 26, 1990 amendment retroactive. *Redetermination on Remand* at 8; Def.'s Reply to Pls.' and Def.–Intervenor's Comments on Redetermination on Remand at 8 (citing Remand R. Public Doc. No. 2 at 3 (Timken's Comments on Draft Remand Results)).

The Court agrees that the 0.97% "all others" LTFV rate is a nullity. In the course of Commerce's amending CMEC's margin pursuant to *Timken,* 12 CIT at 955, 699 F.Supp. at 300, the "all others" rate was amended to 2.96%. This revision was not challenged. *See Timken,* 13 CIT at 238, 714 F.Supp. at 535. The Court affirmed Commerce's remand results in their entirety. *Id.* at 239, 714 F.Supp. at 536. The CAFC affirmed this Court's decision. *See Timken,* 894 F.2d at 385. Hence, the 2.96% "all others" rate governs and applies retroactively to unreviewed exporters and producers for whom liquidation was suspended during pendency of the litigation as a result of the injunction[1] obtained by Timken. *Cf. Asociacion Colombiana de Exportadores de Flores v. United States,* 916 F.2d 1571, 1575–77 (Fed.Cir.1990).

UCF also argues that the 2.96% rate is inapplicable as UCF's imports came through third country sources (*e.g.,* Hong Kong). Pls.' Comments on Redetermination on Remand at 2–3.

This argument cannot prevail. Assignment of a third country reseller rate depends on a timely claim and proof of entitlement. UCF points to no evidence that it argued statutory third country reseller status during this review. *See* 19 U.S.C. § 1677b(f) (1988). UCF did not give Commerce the opportunity to grant or deny a third country reseller rate during the review.[2] The exhaustion-of-administrative-remedies doctrine allows the agency "to address the argument and thus prepare the issue for judicial review." *Encon Indus., Inc. v. United States,* 1994 WL 520917, *1 (Sept. 19, 1994). "[J]udicial review of administrative action is inappropriate unless and until the person seeking to challenge that action has utilized the prescribed administrative procedures for raising the point." *Sharp Corp. v. United States,* 837 F.2d 1058, 1062 (Fed.Cir.1988). The "failure to enforce the exhaustion of administrative remedies principle could lead to 'frequent and deliberate flouting of administrative processes [that] could weaken the effectiveness of an agency by encouraging people to ignore [administrative] procedures.'" *Federal–Mogul Corp. v. United States,* 18 CIT ——, ——, 872 F.Supp. 1011, 1017 (1994) (quoting *McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969)). Therefore, the Court disregards this argument.

Finally, UCF argues that Commerce's "PRC rate" is an attempt to carve out an exception to the law enunciated in *Federal–Mogul,* 17 CIT at 442, 822 F.Supp. at 782. To highlight the alleged impropriety of a "PRC rate," UCF cites 19 U.S.C. §§ 1671d(c)(1)(B)(i) and 1673d(c)(1), *as amended by* the Uruguay Round Agreements Act, Pub.L. No. 103–465, 108 Stat. 4809 (1994) ("URAA"), which essentially provide that in final determinations, Commerce shall

---

1. *See* Remand R. Public Doc. No. 2, Ex. 4.

2. UCF cites to the administrative record in support of applicability of a third country reseller rate. However, other than arguments presented in its post-Final Results briefs, the only other document cited concerns the question of whether Timken properly named individual producers/exporters for inclusion in this review. Administrative R. Public Doc. No. 185, Fr. 2168. With respect to third country exports, the document is ambiguous at best. *Id.* at Fr. 2170. UCF's comments on Commerce's draft redetermination and its complaint also do not make the third country reseller claim. Remand R. Public Doc. No. 3; Compl.

determine an estimated "all others" rate for all exporters and producers not individually investigated. 19 U.S.C. §§ 1671d(c)(1)(B)(i)(I); (B)(ii) and 1673d(c)(1)(B)(i)(II) and (B)(ii) (1994).

Timken argues that the PRC rate should be based on best information available ("BIA") and the highest rate found in the review, i.e., Jilin's rate. In support, Timken argues that Commerce intended to review all PRC producers and exporters. Timken faults the PRC authorities for failing to identify all such producers and exporters and claims that because the producers and exporters were included in this review but failed to participate, BIA should apply. Resp. of Def.–Intervenor to Redetermination on Remand.

The Court will not entertain Timken's argument and reverse its previous holding in this case in favor of a BIA rate.[3] The sole question on this issue is whether Commerce has carried out the Court's remand instructions.

■ The Court has recognized Commerce's "presumptive single entity" policy which compensates for the fact that state-controlled companies have an identity as a totality or conglomeration which is elusive, and which requires that non-market economy ("NME") companies pass the de jure/de facto test or be considered a representative of the single entity. See UCF, 18 CIT at ——, 870 F.Supp. at 1126. See also Tianjin Machinery Import & Export Corp. v. United States, 16 CIT 931, 934–37, 806 F.Supp. 1008, 1013–15 (1992). However, in establishing a so-called "PRC rate" in lieu of an "all others" rate in the Redetermination on Remand, Commerce expands this policy while disregarding the Court's remand instructions.

Commerce argues, "Given that an all others rate does not change once established in an investigation, use of this rate in an non-market economy case would render Commerce's NME practice meaningless." Def.'s

Reply to Pls.' and Def.–Intervenor's Comments on Redetermination on Remand at 6. While the Court appreciates Commerce's dilemma, this remand is not the proper vehicle for responding to this concern. Other than pointing to its current rationale for its NME policy, including an example of application of a single country-wide "all others" rate where no company proved autonomy from the central government,[4] Commerce has pointed to no authority for establishing a "PRC rate" in lieu of an "all others" rate.

Commerce argues that without a "PRC rate," "[t]o effectively counteract the effects of dumping, Commerce would have to review each and every NME producer or exporter of TRB's. If not, entries of the single presumptive entity would be funneled through the all others rate (which would not change review to review), regardless of the actual amount of dumping." Id. at 6. Commerce contends that this result would conflict with 19 U.S.C. § 1675(a)(1) (1988), which requires reviews only upon request. Id.

While Commerce has valid concerns concerning the evasion of dumping penalties in proper measure, abandonment of the "all others" rate in the manner attempted here may be shortsighted. The "all others" rate is rightfully applicable to an unspecified number of PRC companies. In the review at issue, for example, eight companies successfully established their independence from the state-controlled entity. Final Results, 56 Fed.Reg. at 67,597. In fact, Commerce stated, "Since the investigation, every reviewed company has either qualified for a separate rate or a third country reseller rate." Def.'s Reply to Pls.' and Def.–Intervenor's Comments on Redetermination on Remand at 4. Commerce's so-called "PRC rate" does not take into consideration these NME independent entities.

In addition, the Court has recognized that importers, foreign producers and the domestic industry will not seek review if satisfied with the "all others" rate assigned in the

---

**3.** Although Timken suggests that the PRC authorities were responsible for specifying individual producers/exporters for review, this Court has stated that 19 C.F.R. § 353.22(a)(1) (1991) "is requester oriented" and "imposes no burden on

Commerce." UCF, 18 CIT at ——, 870 F.Supp. at 1127.

**4.** See quoted text supra at 438 (citing 56 Fed.Reg. 2,742).

LTFV investigation. *Federal–Mogul*, 18 CIT at ——, 822 F.Supp. at 788. However, under the expanded PRC policy which Commerce seeks here to effectuate, unreviewed non-state-controlled NME entities would be forced to seek review to avoid a potentially higher PRC cash deposit rate which, according to Commerce,[5] would be subject to change from review to review upon review of any company representing the presumptive single entity. Likewise, the domestic industry would request review to guard against a potentially lower cash deposit rate. This would have the effect of increasing the number and complexity of administrative reviews, thereby defeating the express purpose of the 1984 amendment to 19 U.S.C. § 1675(a).[6] Commerce's rationale for a "PRC rate" does not address this problem.

Furthermore, although 19 U.S.C. §§ 1671d(c)(1)(B)(i) and 1673d(c)(1), as amended by the URAA, are inapplicable because this third review was initiated on July 26, 1990 before the effective date of those amendments, the amended provisions nonetheless indicate Congressional support for the "all others" rate without distinction for NME or non-NME contexts. *See* 19 U.S.C. §§ 1671d(c)(1)(B)(i)(I); (B)(ii) and 1673d(c)(1)(B)(i)(II) and (B)(ii).

Commerce further states that

the revised Tariff Act will not compel Commerce to abandon the PRC rate. *As with rates in any other case, the PRC rate is a rate assigned to a specific entity—the "presumptive single entity"* referred to in the Final Remand Results.... Section 735(c)(5) of the Revised Tariff Act requires Commerce to "determine the estimated weighted average dumping margin for each exporter and producer *individually investigated* ...." 19 U.S.C. § 1673d(c)(1)(b)(i)(I) (West Supp.1995).

*The PRC rate assigned to the single presumptive entity falls into this category.* Def.'s Reply to Pls.' and Def.–Intervenor's Comments on Redetermination on Remand at 14 (emphasis added). Suffice it to say that Commerce faces a challenge, in the NME context, to find fair and lawful means of protecting domestic industries from dumped NME-origin merchandise. In any event, Commerce's view of the "presumptive single entity" as an "individually investigated" exporter/producer ignores the fact that there are two categories of companies exporting PRC-origin merchandise to the United States: state-controlled companies and independent companies.

For the reasons stated above, the Court rejects a change to a "PRC rate" in lieu of an "all others" rate. However, the Court sees no reason to remand this case a second time as the rate percentage applied by Commerce is correct. Therefore, exclusive of the "PRC rate" terminology, the Court affirms Commerce's reinstatement of the 2.96% "all others" cash deposit rate applicable prior to these Final Results for entries of unreviewed companies which have not become subject to assessment pursuant to a subsequent administrative review.

### 2. *Jilin's Foreign Inland Freight Costs*

■ In *UCF*, 18 CIT at ——, 870 F.Supp. at 1129, the Court remanded this case to Commerce "to eliminate the arithmetic error with regard to Jilin's foreign inland freight costs." Upon remand, Commerce "corrected the error." *Redetermination on Remand* at 5. The revised freight adjustment resulted in a 7.07% margin for Jilin. *Id.* at 9.

As Commerce has corrected the error in question and the result is uncontested, the Court affirms Commerce's Redetermination on Remand on this issue as supported by substantial evidence and in accordance with law.

---

**5.** Def.'s Reply to Pls.' and Def.–Intervenor's Comments on Redetermination on Remand at 6.

**6.** Congress amended 19 U.S.C. § 1675(a) to require administrative reviews of entries of merchandise subject to an outstanding antidumping duty order only upon request by an interested party. Trade and Tariff Act of 1984, Pub.L. No. 98–573, Title VI, § 611(a)(2), 98 Stat. 3031

(1984). Congress stated that the amendment "is designed to limit the number of reviews in cases in which there is little or no interest, thus limiting the burden on petitioners and respondents, as well as the administering authority." H.R.Conf.Rep. No. 1156, 98th Cong., 2d Sess. 181 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4910, 5220, 5298.

*Conclusion*

In accordance with the foregoing opinion, this Court, after due deliberation and review of all papers in this action, finds that Commerce's Redetermination on Remand is in accordance with law and supported by substantial evidence. For the reasons stated above, the Court rejects the terminology "PRC rate."

## JUDGMENT

The Department of Commerce, International Trade Administration ("Commerce"), having submitted its Final Results of Redetermination Pursuant to Court Remand, *UCF America, Inc. v. United States,* 18 CIT ——, 870 F.Supp. 1120 (1994) (*"Redetermination on Remand"*), and the Court having examined all comments filed in regard to Commerce's Redetermination on Remand, it is hereby

**ORDERED** that plaintiffs' request for an order directing Commerce to issue a second redetermination is denied; and it is further

**ORDERED** that Commerce's Redetermination on Remand is affirmed exclusive of the terminology "PRC rate"; and it is further

**ORDERED** that this case is dismissed.